Filed 9/30/13; pub. order 10/29/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA CLEAN ENERGY COMMITTEE,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>CITY OF SAN JOSE,<br><br>     Defendant and Respondent. | H038740<br>(Santa Clara County<br>Super. Ct. No. CV212623) |

Appellant California Clean Energy Committee (CCEC) appeals from a trial court's judgment in favor of respondent City of San Jose (City). CCEC filed a petition for writ of mandate challenging City's certification and approval of an environmental impact report (EIR) analyzing the potential environmental effects of a proposed update to City's general plan, titled "Envision San Jose 2040 General Plan" (hereafter Envision San Jose), prepared pursuant to the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). The trial court granted summary judgment in City's favor, after finding that CCEC failed to exhaust its administrative remedies, as no administrative appeal was filed from City's planning commission's certification of the final EIR.[1]

---

[1] The record indicates that the environmental impact report considered by City was actually called a "program environmental impact report," or a PEIR. For clarity we will simply refer to the Envision San Jose PEIR as a final EIR, or EIR, when appropriate.

For the reasons set forth below, we find that the city council improperly delegated CEQA certification duties to the planning commission, and conclude CCEC adequately exhausted its administrative remedies.  Accordingly, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### City's Approval of the Envision San Jose Plan

City made the EIR for the Envision San Jose plan available for public review on June 17, 2011.  The Envision San Jose plan is a comprehensive update of City's "Future San Jose 2020 General Plan," adopted by the city council in 1994.  As described by City, Envision San Jose is a "long-term plan that describes the amount, type and phasing of development needed to achieve the City's social, economic, and environmental goals. [Envision San Jose] is the policy framework for decision making on both private development projects and City capital expenditures."  An EIR was prepared pursuant to CEQA, since the plan would have potentially significant environmental impacts on land use, transportation, noise, air quality, biological resources, aesthetics, population and housing growth, and greenhouse gas emissions.  The public comment period on the EIR extended from June 17, 2011, to August 1, 2011.

On July 28, 2011, CCEC submitted a written comment letter in response to the draft EIR, criticizing the project and the draft EIR's analysis with regard to certain environmental impacts, and also arguing that the draft EIR should be recirculated.  The planning commission held a public hearing on the Envision San Jose final EIR on September 28, 2011.  The draft EIR, along with a first amendment to the draft EIR, constituted the final EIR for the project.  Notably, the notice of the public hearing prepared by the planning commission stated that the commission's "action on rezoning, prezonings, General Plan Amendments and Code Amendments is only advisory to the City Council.  The City Council will hold public hearings on these items."  Nonetheless, the action report from the meeting indicates that the commission members certified the

2

final EIR for the Envision San Jose project as complete and in compliance with CEQA, and that the commission members further recommended approval of the project. The commission then issued resolution No. 11-059, where it declared the final EIR was completed in compliance with CEQA, that the final EIR reflected the independent judgment and analysis of City, and that the copies of the final EIR would be delivered to the decisionmaking body for the project.

CCEC then submitted a letter to City's department of planning, building and code enforcement on October 31, 2011. The one-page letter included a request that the commission include in its administrative record a study prepared by StrongTowns.org, and included an encouragement that City reconsider the proposals made in the Envision San Jose plan. No appeal from the planning commission's certification of the final EIR was filed, and the letter did not point to any specific deficiencies in the final EIR or the certification process.

The city council convened on November 1, 2011, and conducted a public hearing on the Envision San Jose plan. The city council's minutes indicated it received the memorandum from the director of the department of planning, building and code enforcement transmitting the recommendations made by the planning commission. Public comments were made, and after a closed discussion, the city council approved the Envision San Jose plan and adopted resolution No. 76041.

Resolution No. 76041 in part stated that "prior to the adoption of this Resolution, the Planning Commission of the City of San Jose certified the [final EIR] prepared for the 2040 General Plan (also sometimes referred to herein as the 'Project') and found the [final EIR] was completed in accordance with the requirements of CEQA" and that "no appeal of the Planning Commission's certification of the [final EIR] was filed with CITY as provided for under Title 21 of the San Jose Municipal Code." In the resolution, the city council then certified the final EIR as in compliance with CEQA, and made the

3

findings that it had independently reviewed and analyzed the final EIR prior to acting upon and approving the Envision San Jose plan. The resolution stated that the city council had "independently reviewed and analyzed" the final EIR and considered the comments and information contained therein, including the written and oral comments received at the public hearings on the final EIR. The city council issued resolution No. 76042 adopting the plan the same day. The minutes from the city council's public hearing do not reflect that representatives from CCEC were present at the public hearing.

### *The Petition for Writ of Mandate*

CCEC filed a petition for writ of mandate in the trial court on November 4, 2011, arguing that the approved final EIR fell below the standards set forth in CEQA, and that the EIR should have been recirculated as it contained significant changes from the draft EIR. City filed a motion for summary judgment on the basis that CCEC had failed to exhaust its administrative remedies as no one appealed the planning commission's certification of the final EIR. After a hearing, the trial court issued an order on July 17, 2012, granting City's motion for summary judgment. Judgment was entered in City's favor on August 18, 2012. CCEC appealed.

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under a de novo standard of review. (*Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1385.) Summary judgment is granted if all the moving papers show there is no triable issue of any material facts, and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Defendants are entitled to summary judgment if a necessary element of plaintiff's complaint cannot be established, or if there is a complete defense to the plaintiff's cause of action. (*Id*. subd. (o)(2).) In reviewing a grant of summary judgment in favor of the defendant, as in this situation, we must review the entire record de novo and determine whether the defendant " 'conclusively negated a

4

necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial.' " (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1709.)

We further apply a de novo standard of review to the question of whether the doctrine of exhaustion of administrative remedies applies in this case. (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 873 (*Citizens for Open Government*).)

## DISCUSSION

The trial court never reached the merits of CCEC's petition for writ of mandate, as it granted summary judgment on the ground that CCEC failed to exhaust its administrative remedies as required by Public Resources Code section 21177. Accordingly, on appeal CCEC argues the trial court erred on two grounds: (1) the exhaustion doctrine was satisfied because the city council, acting as the lead agency with the ultimate responsibility to approve or disapprove the final EIR and project, certified the final EIR with knowledge of CCEC's objections, and (2) the planning commission's certification of the final EIR was unlawful because the San Jose City Charter permits the planning commission only to make recommendations.

We address CCEC's contentions in turn. First we address the lawfulness of the planning commission's certification of the EIR, because if the EIR was not lawfully certified by the planning commission then no administrative appeal need be taken to exhaust administrative remedies. We conclude that the EIR was not properly certified by the planning commission, as the planning commission could not be delegated the duty to certify a final EIR given that it is not a decisionmaking body with respect to the Envision San Jose project. Second, we address CCEC's argument that it exhausted its administrative remedies by filing its comment letters with the planning commission. We conclude that CCEC exhausted its administrative remedies with respect to the challenges

5

to the sufficiency of the EIR and CCEC's argument that the draft EIR should have been recirculated, as these points were adequately raised with the city council via CCEC's comment letter.

    1. *The Planning Commission's Certification of the Final EIR*

    Preliminarily, we briefly review the relevant provisions of CEQA, the CEQA Guidelines, and the implementing San Jose Municipal Code sections that discuss EIR certification and delegation of duties under CEQA.

### *Overview of Appropriate Delegation of the EIR Certification Process*

    The CEQA Guidelines provide an outline of the procedures required to certify an environmental impact report and to approve a project. Certain tasks may be delegated, but others may not.[2] The CEQA Guidelines specifically mandate that the decisionmaking body of a public agency shall not delegate the function of "[r]eviewing and considering a final EIR or approving a negative declaration prior to approving a project." (CEQA Guidelines, § 15025, subd. (b)(1).) This guideline works in conjunction with the certification process for the final EIR. The CEQA Guidelines provide that prior to approval of a project, the lead agency must certify that: (1) the final EIR complies with CEQA, (2) the final EIR was presented to the decisionmaking body of the lead agency and the decisionmaking body reviewed and considered the information in the final EIR prior to approving the project, and (3) the final EIR reflects the lead agency's independent judgment and analysis. (*Id*. § 15090, subd. (a).)

    However, this is not to say that delegation is improper in all circumstances. The lead agency may delegate certain duties under CEQA, such as the certification of the final EIR, as provided by Public Resources Code section 21151. Public Resources Code

---

    [2] The CEQA Guidelines, which implement provisions of CEQA, are codified at California Code of Regulations, title 14, section 15000 et seq. Further references to the CEQA Guidelines are to California Code of Regulations, title 14, section 15000 et seq.

6

section 21151, subdivision (c), states that "[i]f a nonelected decisionmaking body of a local lead agency certifies an environmental impact report, approves a negative declaration, or mitigated negative declaration, or determines that a project is not subject to this division, that certification, approval, or determination may be appealed to the agency's elected decisionmaking body, if any."  The CEQA Guidelines appear to provide for a similar delegation power, as it specifies that "[w]hen an EIR is certified by a non-elected decision-making body within a local lead agency, that certification may be appealed to the local lead agency's elected decision-making body, if one exists.  For example, certification of an EIR for a tentative subdivision map by a city's planning commission may be appealed to the city council.  Each local lead agency shall provide for such appeals."  (CEQA Guidelines, § 15090, subd. (b).)

As shown from the CEQA Guidelines cited above, there are different duties and responsibilities assigned to lead agencies and decisionmaking bodies.  The CEQA Guidelines define a "lead agency" as "the public agency which has the principal responsibility for carrying out or approving a project."  (CEQA Guidelines, § 15367.)  In this instance, the lead agency would be the City of San Jose, acting through the city council, as it is the entity that has the principal responsibility for approving the Envision San Jose general plan.  "The lead agency will decide whether an EIR or negative declaration will be required for the project and will cause the document to be prepared." (*Ibid*.)  A "decision-making body," on the other hand, is defined as "any person or group of people within a public agency permitted by law to approve or disapprove the project at issue." (*Id*. § 15356.)  In accordance with these guidelines, the lead agency for a particular project could be a city council, and the decisionmaking body can be a nonelected body such as a planning commission, so long as the planning commission has the ability to approve or disapprove the project at issue.

7

The CEQA Guidelines therefore provide that a lead agency may delegate certification of the final EIR to a decisionmaking body, defined as a group of persons who have the ability to approve or disapprove a project.[3]

### *The San Jose Municipal Code Ordinances*

CEQA Guidelines section 15022 states that a public agency shall adopt procedures consistent with both CEQA and the guidelines in order to administer the agency's responsibility for environmental review. This includes "[a]ssigning responsibility for determining the adequacy of an EIR or negative declaration." (CEQA Guidelines, § 15022, subd. (a)(8).) City has enacted municipal code ordinances in order to implement the requirements of CEQA, and to delegate certain duties to various bodies within City's organizational structure.

San Jose Municipal Code section 21.04.010, subdivision A, states that this particular title of City's municipal code "incorporates by reference and adopts the objectives, criteria and procedures for environmental review contained in [CEQA] and the CEQA Guidelines." The code section further specifies that to the extent any conflicts exist between this title of City's municipal code and CEQA or the CEQA Guidelines, the relevant provisions in CEQA or the CEQA Guidelines control. (San Jose Mun. Code, § 21.04.010, subd. A.)

---

[3] This interpretation follows the analysis set forth in a well-regarded treatise on CEQA, which states: "The decision-making body need not necessarily be the lead agency's elected officials. . . . The CEQA Guidelines define 'decision-making body' as 'any person or group of people within a public agency permitted by law to approve or disapprove the project at issue.' CEQA Guidelines, § 15356. Thus, for example, a city council may delegate the EIR certification function to an appointed body such as its planning commission, if the relevant city ordinance empowers the planning commission to approve or disapprove the project at issue." (Remy et al., Guide to the Cal. Environmental Quality Act (11th ed. 2007) pp. 375-376.)

8

The San Jose Municipal Code dictates that City's planning commission certifies the final EIR of projects requiring environmental review. (San Jose Mun. Code, § 21.07.010 et seq.) Section 21.07.020 of the San Jose Municipal Code states that the planning commission shall hold hearings to certify the final EIR as complete and prepared in compliance with CEQA. Upon conclusion of the certification hearing, the planning commission is entitled to find a final EIR complete and in conformity with the requirements of CEQA. (*Id*. § 21.07.030.) "If the planning commission certifies the final EIR, it may then immediately act or make recommendations on the project associated with the EIR." (*Id*. subd. B.) Actions or recommendations by the planning commission cannot be deemed final until after the expiration of the appeal period specified in San Jose Municipal Code section 21.07.040. (*Id*. § 21.07.030, subd. C.) Individuals may file written appeals of the planning commission's certification no later than 5:00 p.m. on the third business day after certification. (*Id*. § 21.07.040, subd. A.)

### *The San Jose Municipal Code in Conjunction with CEQA and the CEQA Guidelines*

CCEC argues that under the CEQA Guidelines, only a decisionmaking body is able to certify a final EIR, and since the planning commission has no power to approve the general plan under the relevant municipal ordinances, its certification could not be legal. City counters that the certification process was essentially bifurcated into two parts, with the planning commission certifying that the final EIR was complete and in compliance with CEQA, and the city council certifying the other requirements set forth under CEQA Guidelines section 15090.[4] We disagree with City's characterization of the

---

[4] Notably, in its resolution certifying the final EIR, the planning commission also stated that it certified that the final EIR reflected City's independent judgment and analysis. However, City did not argue below or here on appeal that the planning commission certified the final EIR as to this aspect.

9

bifurcated certification process, and further find fault with City's delegation of CEQA approval to the planning commission, a nondecisionmaking body with respect to the general plan.

As explained, *ante*, CEQA Guidelines section 15090 requires that prior to approval of a project, the lead agency must certify that: (1) the final EIR is compliant with CEQA, (2) the final EIR was presented to the decisionmaking body of the lead agency and the decisionmaking body reviewed and considered the information in the final EIR prior to approving the project, and (3) the final EIR reflects the lead agency's independent judgment and analysis. (CEQA Guidelines, § 15090, subd. (a).) The lead agency in this situation is the city council, which neither City nor CCEC disputes. However, City states in its brief that it considers the planning commission to be a nonelected decisionmaking body. We disagree. While the planning commission may be a nonelected decisionmaking body for certain projects that require environmental review, it is not a "decision-making body" with respect to City's general plan. The CEQA Guidelines define a "decision-making body" as any group that has power to approve or disapprove the project at issue. (*Id*. § 15356.) Here, the planning commission was not vested with the power to approve or disapprove a general plan.[5] Accordingly, as noted *ante*, the city council should be considered the lead agency as well as the decisionmaking

---

[5] The San Jose City Charter bestows upon the planning commission certain powers and duties, including the power to "[m]ake recommendations to the [city council] respecting the adoption, amendment, or repeal of master, general, comprehensive, precise or specific plans for future physical development of the City or any part thereof, and periodically review the same," and the power to "[e]xercise such other powers and perform such other functions and duties as may be expressly given to it by other provisions of [the] Charter, or exercise such other powers or perform such other functions as may be prescribed by the [city council] not inconsistent with the provisions of [the] charter." Both City and CCEC assert that the city council is the decisionmaking body in its briefs. In its reply brief, City makes the statement that the "[city council] is the decision-making body for approving projects such as [Envision San Jose]."

10

body with respect to the Envision San Jose project. The planning commission is therefore a nonelected nondecisionmaking body with respect to the Envision San Jose project.

The City contends that the certification process under CEQA Guidelines section 15090 is delegated like so: (1) the planning commission certifies the first requirement under CEQA Guidelines section 15090, subdivision (a), that the final EIR is complete and in compliance with CEQA, and (2) the lead agency, or city council in this case, then certifies the second and third requirements under CEQA guidelines section 15090, subdivision (a), namely that the final EIR was presented to the decisionmaking body which reviewed and considered the final EIR, and that the final EIR reflects the decisionmaking body's independent judgment and analysis. We find that such a delegation of duties is improper under CEQA.

CEQA Guidelines section 15025 specifically prohibits the lead agency's decisionmaking body from delegating its obligation to review and consider a final EIR to another, inferior entity within its agency. The lead agency's obligation to review and consider a final EIR is the second of the three certification requirements outlined in CEQA Guidelines section 15090, subdivision (a). As a leading treatise on CEQA notes, "[t]he first aspect of certification, as noted earlier, is the conclusion that '[t]he final EIR has been completed in compliance with CEQA.' CEQA Guidelines, § 15090, subd. (a)(1). The third finding required for certification, discussed above, is that '[t]he final EIR reflects the lead agency's independent judgment and analysis.' *Id.* at subd. (a)(3). There are no express prohibitions against the delegation of these two aspects of certification." (Remy et al., Guide to the Cal. Environmental Quality Act, *supra*, at p. 376.) We agree that the language of CEQA Guidelines section 15090, subdivision (a)(1) and (3), does not specify that the decisionmaking body must be the entity making these respective findings.

11

Nonetheless, the CEQA Guidelines make it clear that there are certain duties that may not be delegated to nondecisionmaking bodies. A decisionmaking body, for instance, cannot delegate its duty under the guidelines to "review[] and consider[]" the final EIR. (CEQA Guidelines, § 15090, subd. (a)(2).) The language of the San Jose Municipal Code provides that the planning commission may, after conclusion of its certification hearing, find that the final EIR is "complete and conforms to the requirements of CEQA." (San Jose Mun. Code, § 21.07.030, subds. A & B.) The San Jose Municipal Code does not state the planning commission is then tasked with certifying that the final EIR reflects the lead agency's independent view and judgment, nor that the decisionmaking body has reviewed and considered the final EIR.

Yet for all intents and purposes, the certification of the final EIR by the planning commission is meant to be final for the purposes of CEQA, as the San Jose Municipal Code provides that after the planning commission "certifies the final EIR, it may then immediately act or make recommendations on the project associated with the EIR." (San Jose Mun. Code, § 21.07.030, subd. B.) An alternate reading of the municipal code would produce a strange result where the planning commission has made only *one* out of the *three* required findings under CEQA Guidelines section 15090, subdivision (a), for all projects requiring CEQA approval, with no provisions for further CEQA certification by the planning commission or the lead agency. Logically, the planning commission would not be able to "immediately act" if it did not make *all three* of the requisite findings under CEQA Guidelines section 15090, subdivision (a).

Furthermore, even if the city council delegated to the planning commission the power to certify the final EIR only with respect to the aspect of certification that the final EIR was complete and in compliance with CEQA (CEQA Guidelines, § 15090, subd. (a)(1)), such a delegation is improper. CCEC argues that a delegation of the duties to review and consider the EIR to the planning commission is against the procedures set

forth in the CEQA Guidelines, citing the decision in *Kleist v. City of Glendale* (1976) 56 Cal.App.3d 770. In *Kleist*, the appellate court found that the city council improperly delegated review of the final EIR to a nondecisionmaking inferior entity. (*Id.* at pp. 778-779.) While *Kleist* is not specifically on point, as City argues it only partially delegated its certification functions, we find that the decision is persuasive. Here, City argues it delegated to the planning commission, a nondecisionmaking entity, the ability to certify that a final EIR is complete and in compliance with CEQA.

Delegation of certification of an EIR to a nonelected *decisionmaking* body has been condoned by courts. In *California Oak Foundation v. Regents of University of California* (2010) 188 Cal.App.4th 227 (*California Oak Foundation*), the appellants opposing a project contended that the UC Regents had improperly delegated authority to certify an EIR to one of its committees. (*Id.* at p. 288.) The appellate court stated that CEQA's Office of Planning and Research had earlier prepared a note for CEQA Guidelines section 15090, which provided that " '[section 15090] omits any mention of delegating the certification functions. Instead, the responsibility for certification rests with the Lead Agency. This approach allows Lead Agencies to determine for themselves how they will assign responsibility for completing the certification.' " (*California Oak Foundation*, *supra*, at p. 290.) The court then concluded that under the Regents' bylaws and the university's CEQA policy, the project at issue was subject to approval by the committee that certified the EIR; therefore, the committee was the decisionmaking body authorized to approve the project, and was also the decisionmaking body authorized to certify the EIR. (*Id.* at p. 291.) Accordingly, there was no error in the delegation. (*Id.* at pp. 292-293.)

But here, certification of the final EIR was not delegated to a nonelected decisionmaking body. Rather, it was delegated to a nonelected nondecisionmaking body, the planning commission. We find that such a delegation was improper under CEQA,

13

which explicitly allow for such a delegation only to a decisionmaking body.  (CEQA Guidelines, §§ 15025, 15090.)

As noted above, there appears to be no express prohibition against delegating the certification of the aspect that the final EIR has been completed in compliance with CEQA (CEQA Guidelines, § 15090, subd. (a)(1)).  However, cases have held that " '[p]ublic participation is an "essential part of the CEQA process." '  ([*Laurel Heights Improvement Assn. v. Regents of University of California* (1993)] 6 Cal.4th [1112,] 1123 [(*Laurel Heights II*)].) . . . 'If an agency provides a public hearing on its decision to carry out or approve a project, the agency should include environmental review as one of the subjects for the hearing.'  ([CEQA Guidelines], § 15202, subd. (b).)  Since project approval and certification of the EIR generally occur during the same hearing, the two events are sometimes treated as interchangeable.  (See, e.g., [*Federation of*] *Hillside* [& *Canyon Associates v. City of Los Angeles* (2000)] 83 Cal.App.4th [1252,] 1257 [final EIR certified at same hearing during which project was approved]; [*Association of*] *Irritated Residents* [*v. County of Madera* (2003)] 107 Cal.App.4th [1383,] 1389 [same].)"  (*Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1200.)  Courts have opined that "environmental review is not supposed to be segregated from project approval.  '[P]ublic participation is an "essential part of the CEQA process." '  (*Laurel Heights II*, *supra*, 6 Cal.4th at p. 1123.)"  (*Ibid*.)

" 'The foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' "  (*Pocket Protectors v. City of Sacramento* (2004) 124 Cal.App.4th 903, 926.)  City's proposed bifurcation would allow for a decisionmaking body to be bound by a finding made by a nonelected nondecisionmaking body that the final EIR is completed in compliance with CEQA, and would skirt the purpose of CEQA by segregating environmental review of

14

the EIR from the project approval, as the planning commission has no power to approve the project.[6] According to the San Jose Municipal Code, the planning commission's certification of the final EIR would presumably become final if no appeal was taken, as the code provides for a de novo review by the city council only if an appeal is taken. (San Jose Mun. Code, § 21.07.060.)  This bifurcation would allow the planning commission's certification that the final EIR was completed in compliance with CEQA to be final *before* a decisionmaking body has a chance to consider the adequacy of the project's environmental review and would not afford the fullest possible protection to the environment within a reasonable interpretation of the language of CEQA.  This could also produce a situation in which the city council could be bound by a finding that it finds flawed--that the final EIR is complete and in compliance with CEQA.

Under our analysis, the city council, as the decisionmaking body with respect to the Envision San Jose plan, is the entity tasked with certifying that the final EIR was compliant with CEQA.  The delegation as part of its certification duty to the planning commission, as a nonelected nondecisionmaking body, therefore improperly segregated environmental review from project approval.  We conclude that the planning commission's certification of the final EIR as completed in compliance with CEQA was erroneous.

However, the city council's certification was not faulty.  In the resolution approving the project and certifying the final EIR, the city council stated that it certified the final EIR as in compliance with CEQA, and that it had independently reviewed and

---

[6] However, this is not to say that an elected decisionmaking body cannot adopt the findings made by a nonelected body.  (*Vedanta Society of So. California v. California Quartet, Ltd.* (2000) 84 Cal.App.4th 517, 526-527.)  There is nothing inherently improper with the planning commission reviewing the final EIR, then recommending to the decisionmaking body that it should certify the final EIR.  This recommendation, however, would not be a final certification.

15

analyzed the final EIR prior to acting upon and approving the Envision San Jose plan. Given the city council's declarations and findings, we must presume that its official duties were performed, absent evidence to the contrary. (Evid. Code, § 664.) The issue is thus whether CCEC exhausted its administrative remedies by filing its comment letter to the planning commission, and by filing its one-page letter after the planning commission's certification.

2. *Exhaustion of Administrative Remedies*

Before addressing CCEC's claims, we briefly discuss the doctrine of exhaustion of administrative remedies in the context of CEQA.

### *Overview of the Doctrine of Exhaustion of Administrative Remedies*

The doctrine of exhaustion of administrative remedies bars individuals from seeking redress in the courts over an administrative action if they have failed to "exhaust" the remedies available to them during the proceeding itself. (*California Aviation Council v. County of Amador* (1988) 200 Cal.App.3d 337, 341.) The logic behind such a bar is that it allows the "administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review." (*San Bernardino Valley Audubon Society*, *Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 748 (*Audubon Society*).) It also lightens the burden imposed on the judicial system. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501.)

In the context of CEQA actions, Public Resources Code section 21177 provides that "[a]n action or proceeding shall not be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of

16

the notice of determination." (Pub. Resources Code, § 21177, subd. (a).)[7] "Section 14.5 of chapter 1514 of the Statutes of 1984, the measure by which [Public Resources Code] section 21177 was enacted, 'states that the "intent of the Legislature in adding [Public Resources Code] [s]ection 21177 . . . [is] to *codify* the exhaustion of administrative remedies doctrine." [Citation.] It further provides that "[i]t is not the intent [of the legislation] to limit or modify *any exception* to the doctrine of administrative remedies contained in case law." [Citation.] "We are thus directed to read [Public Resources Code section 21177] with reference to a specific common law rule." [Citation.] That rule has to do with the law of administrative remedies as it preceded the enactment of [Public Resources Code] section 21177.' " (*Tahoe Vista*, *supra*, 81 Cal.App.4th at pp. 589-590.)

*Tahoe Vista* interpreted Public Resources Code section 21177 and the exhaustion of administrative remedies doctrine to preclude plaintiffs from litigating actions in the trial courts unless they have pursued and specifically raised arguments in available administrative appeals. (*Tahoe Vista*, *supra*, 81 Cal.App.4th at pp. 590-591.) The *Tahoe Vista* court reasoned that once " 'a wrongful administrative action has been taken the

---

[7] As explained in *Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 590 (*Tahoe Vista*), "[Public Resources Code] section 21177 is not properly speaking an exhaustion of administrative remedies statute. It requires one to raise issues in the hearing required by CEQA *before* the agency decides whether to approve the negative declaration. [¶] . . . [¶] Rather, the right to appear in a hearing leading to the adoption of a negative declaration is more appropriately viewed as an obligation required to be fulfilled in order to obtain standing."

Accordingly, under Public Resources Code section 21177, a plaintiff must allege noncompliance with CEQA at some point in the administrative review process before acquiring standing to litigate the case in the trial court. (*Tahoe Vista*, *supra*, 81 Cal.App.4th at pp. 590-591.) Here, since it is undisputed that CCEC issued a comment letter on the draft EIR raising concerns with the adequacy of its environmental review, CCEC would certainly have *standing* to litigate the issue in court. However, the pertinent issue here is not whether or not CCEC had standing, but the related issue of whether it exhausted its administrative remedies by filing the letter.

17

focus of the affected members of the public is sharpened. If some reasonable administrative remedy, such as the right to appeal the action of a planning commission, were afforded to challenge such improper action the doctrine of administrative remedies would bar suit by litigants who failed to employ it.' " (*Id.* at p. 590.) Of course, " '[c]onsideration of whether such exhaustion has occurred in a given case will depend upon the procedures applicable to the public agency in question.' " (*Id.* at p. 591.)

Nonetheless, the *Tahoe Vista* court concluded that administrative remedies were exhausted if a plaintiff "raise[s] all issues before the administrative body with ultimate or final responsibility to approve or disapprove the project, even if those issues were not raised before subsidiary bodies in earlier hearings." (*Tahoe Vista*, *supra*, 81 Cal.App.4th at p. 594.) The court held that if it allowed plaintiffs to litigate issues in the trial court not raised previously with the final decisionmaking body, it would allow potential litigants to "narrow, obscure, or even omit their arguments before the final administrative authority because they could possibly obtain a more favorable decision from a trial court." (*Ibid.*)

*Tahoe Vista* dealt with a situation where a plaintiff sought relief from the trial courts, arguing on appeal that an EIR should have been prepared instead of a negative declaration. This issue was brought to the attention of the planning commission during the public comment period. (*Tahoe Vista*, *supra*, 81 Cal.App.4th at p. 582.) Nonetheless, the *Tahoe Vista* plaintiffs filed an administrative appeal during the CEQA process at the administrative level, but filed an appeal as to issues related only to parking, not to the use of a negative declaration. (*Ibid.*) The administrative appeal was filed to the county's board of supervisors, the final decisionmaking authority with respect to the project at issue. (*Id.* at pp. 582-583.) According to the relevant provisions of the county code, on an administrative appeal the board of supervisors could review de novo only issues specifically raised in the administrative appeal. (*Id.* at p. 592.) Since use of a negative declaration was not raised in the administrative appeal, the board of supervisors did not

18

consider the issue. (*Ibid.*) Therefore, the *Tahoe Vista* court concluded that since the issue of the negative declaration was not raised with the final decisionmaking authority, the plaintiffs in *Tahoe Vista* had failed to exhaust its available administrative remedies on that point. (*Id.* at p. 594.)

We understand the *Tahoe Vista* decision as combining the requirements of Public Resources Code section 21177 with the common law doctrine of exhaustion of judicial remedies. Specifically, issues must be first raised with the final decisionmaking authority if one wishes to seek judicial relief. However, we also understand that Public Resources Code section 21177 allows plaintiffs to litigate any issue that is raised before the final decisionmaking authority, even if the plaintiff bringing the litigation was not the one who filed an administrative appeal or was not the one who brought the issue to the final decisionmaking authority's attention. (*Citizens for Open Government*, *supra*, 144 Cal.App.4th at p. 875.) The final decisionmaking authority in *Tahoe Vista* was unable to review the negative declaration issue, as it was confined to reviewing de novo only those issues raised on an administrative appeal. Accordingly, if the board of supervisors in the *Tahoe Vista* case were entitled to a de novo review of all issues raised in the prior administrative proceedings, the *Tahoe Vista* plaintiffs would not have been barred from raising the negative declaration issue to the trial court.

Such an interpretation of the exhaustion doctrine comports with relevant case law that holds administrative remedies to be exhausted if the final decisionmaking body of the project reviews and considers a project environmental impact report de novo, including the criticisms brought by a challenging organization. (*Audubon Society*, *supra*, 155 Cal.App.3d at p. 748.) In *Audubon Society*, the Environmental Review Board (ERB) conducted public hearings, which the Audubon society did not participate in, and found an EIR regarding a construction project adequate. (*Id*. at p. 745.) Later, the planning commission conducted public hearings on project approval, where a representative of the

19

Audubon Society appeared and raised concerns about the project's environmental impact. (*Ibid.*) The planning commission approved the project, and the county's board of supervisors next conducted hearings, during which representatives of the Audubon Society again appeared. (*Id.* at p. 746.) The Audubon Society filed a petition for writ of administrative mandamus, alleging that the approved EIR was inadequate. (*Ibid.*) The appellate court ruled that the doctrine of exhaustion of administrative remedies mandated that the "designated final administrative arbiter is deprived of review, not that an intermediate procedure is circumvented."[8] (*Id.* at p. 748.) Accordingly, since the Board, the agency with ultimate responsibility to approve or disapprove the project in *Audubon Society*, considered the adequacy of the EIR and the total site application, the "purpose of the rule of exhaustion of administrative remedies was fully served by [the Audubon Society's] appearance before the Board." (*Ibid.*)

Moreover, " '[t]he exhaustion of administrative remedies doctrine has never applied where there is no available administrative remedy. [Citations.] . . . [¶] [O]nce a wrongful administrative action has been taken the focus of the affected members of the public is sharpened. If some reasonable administrative remedy, such as the right to appeal the action of a planning commission, were afforded to challenge such improper action the doctrine of administrative remedies would bar suit by litigants who failed to employ it.' " (*Tahoe Vista*, *supra*, 81 Cal.App.4th at p. 590.)

---

[8] City argues that the portion of the *Audubon Society* opinion where the court determined the Audubon Society sufficiently exhausted its administrative remedies through its appearance before the final decisionmaking body is dictum and has no precedential value, since the court disposed of the issue on the other grounds stated in its opinion. (*Audubon Society*, *supra*, 155 Cal.App.3d at pp. 747-748.) We find this argument unavailing. Though we are not bound by precedents created by other appellate courts, we may find the reasoning set forth in their decisions, including dicta, persuasive as to the facts we are presented with on appeal. (*People v. Valencia* (2011) 201 Cal.App.4th 922, 929.)

20

*Application of the Exhaustion Doctrine to CCEC*

As shown from the cited cases above, whether the exhaustion doctrine applies depends on the relevant procedures available in a specific jurisdiction. Here, the San Jose Municipal Code empowers the planning commission with the ability to certify a final EIR as complete and in compliance with CEQA. (San Jose Mun. Code, §§ 21.07.020, subd. A, 21.07.030, subd. A.) An administrative appeal process is also laid out in City's municipal code, which provides that "[a]ny person may file a written appeal of the planning commission's certification of the final EIR with the director, no later than 5:00 p.m. on the third business day following the certification." (*Id.* § 21.07.040, subd. A.) The city council conducts appeal hearings if it is the lead agency. (*Id.* subd. D.)

Though it is unclear from the text of relevant municipal code sections whether the administrative appeal is limited to the specific issues set forth in the appeal form, the municipal code provides that appeals must state "with specificity" the reasons why a final EIR should not be found to be complete and in compliance with CEQA (San Jose Mun. Code, § 21.07.040, subd. B), and appeals will not be considered unless they are based on issues previously raised in public hearings (*id.* subd. C). San Jose Municipal Code section 21.07.060, subdivisions A and C provide that the appeal will be reviewed "de novo," and that upon conclusion of the certification appeal hearing the city council may find the final EIR complete and in conformity with CEQA.

CCEC argues that the designated final administrative arbiter is the city council, and since the city council "reviewed" the final EIR, including CCEC's lengthy comment letter, it was not deprived of meaningful review. As we agree with CCEC's contention that the planning commission's certification of the final EIR was not proper, no administrative appeal had to be taken in order to exhaust administrative remedies. (*Tahoe Vista*, *supra*, 81 Cal.App.4th at p. 590.) Furthermore, there is no available administrative remedy with respect to the *city council*'s certification as provided for in

the San Jose Municipal Code. Since no administrative appeal was available, our discussion is centered on whether CCEC's filing of its comment letter to the planning commission, and its renewed one-page letter to the planning commission after the "certification" by the planning commission, adequately exhausted its administrative remedies.

The situation presented here is analogous to the situation outlined in *Audubon Society* and in our prior decision in *Browning-Ferris Industries v. City Council* (1986) 181 Cal.App.3d 852 (*Browning-Ferris*). In *Browning-Ferris*, BFI, a waste management company, challenged the adequacy of an EIR analyzing environmental impacts of a proposed landfill site within the City of San Jose. (*Id.* at pp. 858-860.) During the review process, the EIR was submitted to the city's planning commission, which found the EIR complete and thereafter issued a recommendation that the zoning for the proposed landfill site be changed. (*Id.* at p. 858.) BFI did not present comments to the planning commission during its public hearing, though it submitted a letter to the city council after the public hearing asserting there were deficiencies in the EIR. (*Ibid.*) The city council conducted a public hearing and subsequently adopted a resolution stating that it had reviewed the EIR, adopted mitigation measures, and adopted an ordinance rezoning the area for a landfill. (*Id.* at p. 859.) BFI thereafter filed a petition for writ of mandate in the superior court, which the city and real parties in interest countered, in part arguing that BFI had failed to exhaust its administrative remedies. (*Ibid.*)

In *Browning-Ferris*, we addressed the argument that BFI had failed to exhaust its administrative remedies, relying on the holding in *Audubon Society*, *supra*, 155 Cal.App.3d 738. (*Browning-Ferris*, *supra*, 181 Cal.App.3d at pp. 859-860.) We noted that the petitioners in *Audubon Society* did not appear before the environmental review board to raise objections to the EIR on the proposed project, but that the petitioners did appear before the planning commission and the board of supervisors to raise their

22

objections. We then turned to the relevant portions of the San Jose Municipal Code in effect at the time in order to determine the role of the planning commission and city council in drafting and finalizing an EIR. The iteration of the San Jose Municipal Code contemplated in *Browning-Ferris* provided that " '*the Director of Planning shall certify* that the Final EIR has been completed in compliance with CEQA and that *the decision making body having final approval authority over the project has* considered and *approved the final EIR* prior to approval of the project.' " (*Id.* at p. 860.) We therefore concluded that the city council in that situation was the final decisionmaking body, and that though BFI did not object to the planning commission during the public hearings it did raise objections by sending a letter to the city council prior to the hearings on the project. (*Ibid.*) Accordingly, we determined that BFI had exhausted its administrative remedies, as it had "pursued its remedies before the agency with the ultimate responsibility for giving final approval of the EIR." (*Ibid.*)

In this situation, as in *Browning-Ferris*, the agency with the ultimate responsibility for giving final approval of the Envision San Jose plan and its corresponding EIR was not the planning commission, but the city council. The planning commission was not a decisionmaking body with respect to the plan. CCEC submitted a detailed letter to the planning commission identifying specific deficiencies in the draft EIR, arguing that the draft EIR failed to consider certain environmental impacts. Therefore, our consideration turns on whether CCEC's letter sufficiently raised its arguments regarding the sufficiency of the EIR to the city council.

"To advance the exhaustion doctrine's purpose '[t]he "exact issue" must have been presented to the administrative agency . . . .' [Citation.] While ' "less specificity is required to preserve an issue for appeal in an administrative proceeding than in a judicial proceeding" because, . . . "parties in such proceedings generally are not represented by counsel . . ." [citation]' [citation], 'generalized environmental comments at public

23

hearings,' 'relatively . . . bland and general references to environmental matters' [citation], or 'isolated and unelaborated comment[s]' [citation] will not suffice.  The same is true for ' "[g]eneral objections to project approval . . . ." [Citations.]' [Citation.] ' "[T]he objections must be sufficiently specific so that the agency has the opportunity to evaluate and respond to them." ' " (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 535-536.)  A review of the comment letter and the issues raised in the petition for writ of administrative mandamus demonstrates that the issues raised in the petition are the same as the issues raised in the comment letter.[9]  CCEC's comment letter pointed to specific aspects of the EIR it felt were deficient, and it argued that the EIR should be recirculated.[10]

-------

[9] Furthermore, after the planning commission's hearing, CCEC submitted a letter to City's department of planning, building and code enforcement, which stated that it was attaching a written study to the letter, and that CCEC believed this written study further supported its "request that the City consider the long-term viability of the fiscal strategy laid out in the EIR and alternative methods for increasing local economic growth."  The full text of CCEC's letter reads:  "Dear [Senior Planner]: [¶] Enclosed with this letter please find a copy of Chapter 6 of the SBA 2006 Report to the President and 'Curbside Chat,' a study prepared by StrongTowns.org.  We are requesting that these be included in the administrative record.  These documents further support the request that the City consider the long-term viability of the fiscal strategy laid out in the EIR and alternative methods for increasing local economic growth.  Given the importance of improving the City's long-term fiscal circumstances, both of these documents contain important information for the City's consideration."  This subsequent letter does not make any specific claims, but CCEC's specific arguments regarding the need for recirculation of the EIR and the alleged deficiencies in the EIR were contained in its initial comment letter on the draft EIR.

[10] Public Resources Code section 21092.1 provides that "[w]hen significant new information is added to an environmental impact report after notice has been given pursuant to Section 21092 and consultation has occurred pursuant to Sections 21104 and 21153, but prior to certification, the public agency shall give notice again pursuant to Section 21092, and consult again pursuant to sections 21104 and 21153 before certifying the environmental impact report."

24

The situation presented to us is dissimilar to the situation addressed in *Tahoe Vista*, where the ultimate decisionmaking authority's review was specifically confined to issues raised in the administrative appeal. City reviewed and certified the EIR de novo, as it is the decisionmaking body with respect to the Envision San Jose plan. Indeed, the city council's resolution stated that it had reviewed and considered the final EIR, along with the comments submitted during the public hearing and comment period. Accordingly, the comment letter issued by CCEC to the planning commission during the public comment period, which specified the alleged deficiencies in the EIR, sufficiently apprised the city council of CCEC's arguments regarding the adequacy of the EIR and the need for recirculation. As previously noted, a review of the contents of the letter and claims CCEC alleged in its petition for writ of administrative mandamus indicates that the claims raised in CCEC's petition were raised in its initial comment letter.[11] Since the city council had the comment letter at the time it certified the final EIR and approved the project, it was fairly apprised of CCEC's objections. Accordingly, CCEC exhausted its administrative remedies.

3. *Conclusion*

Since delegation to the planning commission the duty to certify that the final EIR was complete and in compliance with CEQA is faulty, no administrative appeal was available to CCEC. CCEC therefore adequately exhausted its administrative remedies when it submitted its comment letter raising the inadequacy of the EIR's environmental review and the need for recirculation of the EIR. Therefore, we conclude that the trial court's grant of summary judgment in favor of City was in error.

---

[11] In CCEC's petition for writ of administrative mandamus and its initial comment letter on the draft EIR, CCEC argued there were deficiencies in the EIR's analysis of greenhouse gas emissions, its analysis of energy conversations, and its analysis of alternatives.

## DISPOSITION

The trial court's judgment is reversed.  CCEC is entitled to its costs on appeal.

_____
        Premo, J.

WE CONCUR:

_____
   Rushing, P.J.

_____
   Elia, J.

26

Filed 10/29/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA CLEAN ENERGY COMMITTEE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN JOSE, <br><br> Defendant and Respondent. | H038740 <br> (Santa Clara County <br> Super. Ct. No. CV212623) |

BY THE COURT:

      The opinion which was filed on September 29, 2013, is certified for publication.

_____
Premo, J.

_____
Rushing, P.J.

_____
Elia, J.

      The written opinion which was filed on September 30, 2013, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

_____
Rushing, P.J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. CV212623 |
| Trial Judge: | Hon. Joseph H. Huber |
| Counsel for Plaintiff/Appellant:<br>California Clean Energy Committee | Law Offices of Eugene S. Wilson<br>Eugene S. Wilson |
| Counsel for Defendant/Respondent:<br>City of San Jose | Office of the City Attorney<br>Richard Doyle, City Attorney<br>Nora Frimann, Assistant City Attorney<br>Margo Laskowska, Senior Deputy City<br>Attorney |