Filed 8/23/17 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| PGA WEST RESIDENTIAL ASSOCIATION, INC., Plaintiff and Respondent, v. HULVEN INTERNATIONAL, INC., Defendant and Appellant. | E064270 (Super.Ct.No. INC1301359) **ORDER MODIFYING OPINION** [NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on August 9, 2017, is modified as follows:

1.       On page 20, footnote 11, remove the citation to the court's May 26 and June 5, 2017 orders, and add a new sentence at the end of the footnote.  Footnote 11 should read:

On the court's own motion, we took judicial notice of legislative history materials related to Senate Bill No. 2150 (1985-1986 Reg. Sess.), which adopted the UFTA (Stats. 1986, ch. 383). (Evid. Code, §§ 452, 459.)  The legislative history materials discussed in this opinion are available in this court's case file.

2.       On page 21, footnote 12, delete the first sentence.  Footnote 12 should read:

Normally, legislative committee comments are only persuasive authority when determining the Legislature's intent.  (*McMullen v. Haycock* (2007) 147 Cal.App.4th 753, 759.)  However, the committee comments quoted in this opinion were taken verbatim from the Uniform Laws commissioners' commentary.  (7A pt. II West's U. Laws Ann. (2006) U. Fraudulent Transfer Act, com. to § 4, p. 60; see *id*., com. to § 9, p. 195, cited *post*.)  Therefore, we give substantial weight to the official legislative commentary about the UFTA.  (See *Lundahl v. Telford* (2004) 116 Cal.App.4th 305, 315-316.)

1

3.    On pages 36 to 38, delete footnotes 21 through 26 and renumber the remaining footnotes.  Footnote 27 is now footnote 21, etc.

4.    On page 44, remove the text of footnote 25 (former footnote 31) and replace with revised text.  Footnote 25 should read:

While this appeal was pending, Hulven petitioned this court for a writ of supersedeas to prevent PGA West from foreclosing on a lien placed on the property for delinquent homeowner's association assessments.  We denied the petition without prejudice to Hulven requesting a stay from the trial court.
Either Hulven did not request a stay in the trial court or the trial court denied the stay, because during oral argument before this court counsel for PGA West informed us that it foreclosed on the property and now owns it.  Counsel for Hulven did not contradict this assertion of fact.  PGA West presumably intends to sell the property to at least partially satisfy its judgment against Mork, but it argues the result in this case will somehow provide Hulven with a sword it can use to regain ownership of the property in a quiet title action.  Normally we are limited to the facts in the record on appeal, and we will not consider events that occur after the judgment.  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)
Neither party to this appeal has argued the foreclosure sale rendered this appeal moot.  To the extent the appeal is moot, we have exercised our discretion to retain jurisdiction to decide the important issues of public interest raised herein.  (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106.)

This modification does not effect a change in the judgment.

CERTIFIED FOR PUBLICATION


                                                    McKINSTER            
                                                                    J.
We concur:


RAMIREZ            
            P. J.

CODRINGTON            
            J.




2

Filed 8/9/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


|  |  |
|---|---|
| PGA WEST RESIDENTIAL ASSOCIATION, INC., | |
| Plaintiff and Respondent, | E064270 |
| v. | (Super.Ct.No. INC1301359) |
| HULVEN INTERNATIONAL, INC., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Harold W. Hopp and Sharon J. Waters, Judges.* Reversed with directions.

Sam Walker for Defendant and Appellant.

Peters & Freedman, David M. Peters and Zachary R. Smith for Plaintiff and Respondent.

_____

* Judge Hopp overruled the demurrer, and Judge Waters signed the judgment.

1

I.

INTRODUCTION

In its lawsuit against Hulven International, Inc. (Hulven) and various other

defendants, PGA West Residential Association, Inc. (PGA West) alleged defendant

Dempsey Mork[1] tried to fraudulently insulate the equity in his condominium from

creditors by naming Hulven, a sham corporation entirely owned and controlled by Mork,

as the beneficiary of a deed of trust and note, and by later directing Hulven to foreclose

on the condominium. Hulven demurred to the complaint, arguing PGA West's lawsuit

was barred by the seven-year limitations period for actions under the former Uniform

Fraudulent Transfer Act.[2] (UFTA or the act; § 3439 et seq.) The superior court

overruled the demurrer and, after conducting a bench trial, entered judgment for PGA

West.

In this appeal, Hulven contends the superior court erred by overruling its

demurrer. According to Hulven, the allegedly fraudulent activities by Mork and Hulven

were a "transfer" for purposes of the UFTA and, therefore, this lawsuit was governed by

---

[1] Dempsey and Patricia Mork are not parties in this appeal. Although the Morks are both named as defendants, we understand the allegations in the complaint to relate solely to Dempsey Mork's conduct. Therefore, throughout this opinion references to Mork will be to Dempsey and not to his wife.

[2] After judgment was entered in this case, the Legislature revised the UFTA and renamed it the Uniform Voidable Transactions Act. (Stats. 2015, ch. 44, §§ 2-3, eff. Jan. 1, 2016; *Nautilus, Inc. v. Yang* (2017) 11 Cal.App.5th 33, 36, fn. 2.) The provisions of the former UFTA applicable to this case were not altered in substance. (See Civ. Code, § 3439.14, subd. (d).) We will cite to those provisions as they appear in the current act, but to avoid confusion we will refer to the UFTA throughout this opinion.

All undesignated statutory references are to the Civil Code.

that act and its seven-year limitations period. Because PGA West filed its lawsuit more than seven years after the alleged fraudulent transfer, Hulven contends PGA West's claims were completely extinguished. PGA West responds there was no "transfer" in this case because Hulven never really existed and could not be a transferee and, therefore, the UFTA and its limitations period simply does not apply. Even if the UFTA did apply, PGA West contends Hulven did not reargue the limitations period at trial and, therefore, forfeited the defense. Hulven replies that transfers to dummy or sham entities constitute a "transfer" for purposes of the UFTA and, that by arguing the limitations period in its demurrer, Hulven preserved the defense and did not have to reargue it at trial.

We agree with Hulven that Mork's alleged fraudulent attempt to insulate the equity in his condominium from creditors by naming a sham corporation as the beneficiary on the deed of trust constituted a "transfer" for purposes of the UFTA and that the act's limitations period applies here. We also agree Hulven did not forfeit its defense, but for a different reason. The seven-year limitations period for actions under the UFTA is not simply a procedural statute of limitations that bars a remedy and is forfeited if not properly raised by a defendant. Rather, the UFTA's seven-year limitations period is a substantive statute of repose that completely extinguishes a right or obligation and, under the majority view that we adopt, a statute of repose is not subject to forfeiture.

Because PGA West filed its lawsuit after the UFTA's statute of repose had run, its rights under the act were completely extinguished. Therefore, we must conclude the superior court erred as a matter of law by overruling Hulven's demurrer. The judgment is

3

reversed, and the matter is remanded for the superior court to vacate its order overruling Hulven's demurrer, to enter a new order sustaining the demurrer without leave to amend, and to enter a judgment dismissing the action.

II.

FACTS AND PROCEDURAL HISTORY[3]

A.    *The Complaint.*

In its complaint filed on March 4, 2013, PGA West alleged the following facts:

On or about March 17, 2003, Mork purchased a condominium in the PGA West community in La Quinta, California, for cash and took title to the property free and clear. The fair market value of the property was between $500,000 and $600,000.

On January 28, 2004, a deed of trust was recorded against the property naming Hulven[4] as the beneficiary. There was no public record of Hulven in the United States at the time, and the address given for Hulven was a residence in Indio, California. The owner of that residence claimed no interest in Hulven. Hulven was a completely fictitious entity "created and assumed by Mork," and "Mork and [Hulven] are one in the same."

---

[3] In conformity with the standard of review for an order overruling a demurrer, discussed *post,* § III.A.1., we set forth the factual allegations from Hulven's complaint and accept them as true. (See *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, 347, fn. 1.)

[4] Actually, the deed of trust and other recorded documents attached to the complaint erroneously named "Hovlan International, Ltd." as the beneficiary, not Hulven. To avoid confusion, we will refer to Hulven throughout this opinion.

4

The trust deed purported to secure a promissory note dated January 23, 2004, in which Mork agreed to pay Hulven $450,000 in annual installments of $39,233.05, starting in January 2005. Mork never made a payment to Hulven because "the Note was a fake instrument created for the purposes of furthering Mork's scheme to protect [his] equity in the Property and avoid creditors . . . , and . . . the Note did not impose any obligation on Mork."

Nine months *after* it was named as the beneficiary on the deed of trust, Hulven was incorporated in Montana. Just over two years later, Hulven was involuntarily dissolved. At all times, Mork was Hulven's sole officer, director, and shareholder.

On January 1, 2009, the statute of limitations expired for any claim Hulven might have had against Mork for breach of the note. Hulven never sued Mork because Hulven and Mork are one in the same, and the note never imposed an obligation on Mork.

On June 1, 2011, the superior court in a prior lawsuit entered a judgment against Mork and in favor of PGA West and Mork's neighbors (the Wyatts) in the amounts of $413,369.87 (PGA West) and $1,558,721.71 (Wyatts). PGA West and the Wyatts recorded their abstracts of judgment on June 7 and June 15, 2011, respectively, which effectuated judgment liens against the property.[5]

Around the time of the prior judgment, Mork abandoned the property and moved to Henderson, Nevada. As of the date of the complaint, no amount was paid on the

---

[5] In an unpublished decision, we affirmed the judgment in part and reversed in part. (*PGA West Residential Association, Inc. v. Mork* (Oct. 21, 2014, E054276) [nonpub. opn.].)

judgment and Mork avoided all attempts to enforce it. "Mork is highly skilled in avoiding creditors and hiding assets," and he conducted business under the name Whitehall Montague assisting clients manage debts, modify loans, defend against foreclosures and collections, and protect assets.

On November 15, 2012, a substitution of trustee was recorded naming California Trustee Services, Inc., as trustee of the deed of trust. The substitution was signed on behalf of Hulven by its purported president. Hulven's purported president was actually the assistant to a Dana Point, California, attorney who specialized in "penny stock companies and reverse mergers," and who acted as a filing agent before the United States Securities and Exchange Commission (SEC). Over the years, that attorney represented Mork and a number of entities that Mork registered with the SEC, and the attorney acted in various capacities for those entities.

On the same day the substitution of trustee was recorded—seven years after Mork defaulted on the note and three years after the statute of limitations ran on any claim Hulven might have had against Mork for breach of the note—the trustee recorded and served a notice of default against the property on behalf of Hulven. The notice of default stated the default was in the amount of $209,934.25, as of January 1, 2005, the day Mork was supposed to start making payments on the note, which only represented the unpaid interest. The default amount did not reflect the true amount purportedly owed on the note. The notice of default stated the trustee and Hulven shared a San Diego, California, address.

6

On or about February 15, 2013, the trustee served a notice of trustee's sale to take place on March 14, 2013. The notice of sale identified the unpaid balance under the note as $676,328.

Mork received no consideration from Hulven for the deed of trust, and Mork incurred no obligation under the note. The deed of trust was recorded against the property "to defeat any creditor's claims, and to launder Mork's title if necessary." The nonjudicial foreclosure was also an attempt by Mork to launder the title to the property and free it from adverse claims, specifically PGA West's and the Wyatt's judgment liens.

In its first cause of action for declaratory relief, PGA West alleged the deed of trust was invalid, and it did not create an interest in the property superior to PGA West's interest via the judgment lien because Mork never incurred an obligation under the note. PGA West again alleged Mork and Hulven were indistinguishable and that their interests merged upon execution of the deed of trust. The deed of trust "was a fraudulent obligation incurred by Mork in an attempt to protect Mork's equity in the Property and defeat creditor's claims against the same."

In the second cause of action for injunctive relief, PGA West alleged the foreclosure proceedings Hulven initiated were an attempt by Mork to "launder title to the Property" and free it of all adverse claims. Mork and Hulven's conduct was wrongful and unlawful because the deed of trust was unenforceable.

PGA West's third cause of action for fraudulent conveyance once again alleged that Mork and Hulven were "one in the same." The foreclosure sale, if permitted to proceed, would constitute a fraudulent transfer of the property by Mork and Hulven to

7

deprive creditors of their ability to collect. Mork and Hulven conspired with other named and unnamed defendants to defraud PGA West through the foreclosure sale.

The fourth cause of action for constructive trust again alleged that the foreclosure sale, if permitted to proceed, would constitute a fraudulent transfer.

The fifth and final cause of action requested appointment of a receiver to oversee the proceeds of the foreclosure sale in the event the sale were to proceed before PGA West's claims were adjudicated.

PGA West requested (1) a judicial determination of the parties' rights and a declaration that its judgment lien was superior to and took priority over any purported interest under the deed of trust, (2) a temporary restraining order and injunction to prevent the foreclosure sale, (3) a decree setting aside and declaring void the transfer of the property should the foreclosure sale proceed, (4) general and punitive damages, and (5) interest and costs.

B.     *Temporary Restraining Order and Preliminary Injunction.*

After conducting an ex parte hearing, the trial court issued a temporary restraining order and set a hearing for a preliminary injunction barring defendants from proceeding with the foreclosure sale.

Hulven opposed the preliminary injunction, arguing PGA West's lawsuit was barred by the seven-year limitations period for claims under the UFTA. (§ 3439.09, subd. (c), hereafter § 3439.09(c).) The trial court granted the preliminary injunction, concluding (1) PGA West had a reasonable probability of succeeding in its argument that

8

the deed of trust was not a transfer for purposes of the UFTA and, therefore, its causes of action were not barred, and (2) the balance of hardships weighed in favor of PGA West.

      C.     *The Demurrer*.

Hulven demurred to the complaint, again arguing the lawsuit was barred. It argued (1) the January 2004 deed of trust constituted a "transfer" for purposes of the UFTA, and (2) the UFTA's seven-year limitations period under section 3439.09(c) is absolute, extinguishes any claim to void a fraudulent transfer, and applies to all claims related to a fraudulent transfer whether they are brought under the UFTA or not. Because PGA West's March 2013 complaint related to a fraudulent transfer and was filed more than seven years after that transfer, Hulven argued this lawsuit is completely barred.

PGA West opposed the demurrer, contending (1) the deed of trust did not constitute a "transfer" for purposes of the UFTA, (2) the nature of its claims were in determining interests in real property and not in voiding a fraudulent transfer, and (3) the only fraud related claims had to do with the pending foreclosure sale and not the deed of trust.

The trial court overruled the demurrer. Its order stated: "This is an action to determine priorities in liens against the property for which the statute of limitations has not expired. Furthermore, a sale of property under the deed of trust will trigger a fraudulent transfer action with a new statute of limitations."

D.      *Trial and Judgment*.

Hulven answered PGA West's complaint asserting various defenses, among them that the causes of action were barred by various limitations periods including section 3439.09.

When the case proceeded to trial, Hulven did not reargue that PGA West's causes of action were barred by the limitations period under section 3439.09 and the trial court made no findings regarding that defense.  After conducting a bench trial, the trial court concluded the deed of trust was "fraudulent, void, unenforceable, of no force and effect, and shall be cancelled," and that PGA West's interest in the property was superior to any purported interest in the deed of trust.  The court entered judgment declaring the deed of trust to be void and cancelling it.

Hulven timely appealed.

III.

DISCUSSION

A.      *The UFTA Applies to PGA West's Claims*.

On appeal, the parties revive the arguments they made in relation to Hulven's demurrer.  We conclude the deed of trust was a "transfer" for purposes of the UFTA and, therefore, PGA West's causes of action were subject to the limitations period under section 3439.09(c).

1.      Standard of Review.

An order overruling a demurrer is not directly appealable, but it may be reviewed on appeal from a final judgment.  (*San Diego Gas & Electric Co. v. Superior Court*

10

(1996) 13 Cal.4th 893, 912-913; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182; see Code Civ. Proc., §§ 904.1, 906.)  We review an order overruling a demurrer de novo.[6]  (*Boy Scouts of America National Foundation v. Superior Court* (2012) 206 Cal.App.4th 428, 438; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152; *Guardian North Bay, Inc. v. Superior Court* (2001) 94 Cal.App.4th 963, 971.)

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]  We also consider matters which may be judicially noticed.'  [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) In addition, we consider the complaint's exhibits.  (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 791-792; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.)

---

[6] In its main brief, PGA West contends we must apply the substantial evidence standard of review because the trial court made a factual finding that no transfer occurred that would implicate the UFTA.  PGA West places the cart before the horse.  Before we may reach the question of whether the trial court's factual findings in its statement of decision are supported by substantial evidence, we must first address Hulven's argument that the trial court erred as a matter of law by overruling its demurrer.  As stated in the text, the standard of review for an order overruling a demurrer is de novo.  Because we conclude the trial court erred by overruling the demurrer, and we reverse the judgment and remand for the trial court to sustain the demurrer without leave to amend and to enter a judgment of dismissal, we do not reach Hulven's additional argument that the judgment is not supported by substantial evidence.

11

## 2. The UFTA.

"The UFTA permits defrauded creditors to reach property in the hands of a transferee." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.) "The UFTA was enacted in 1986; it is the most recent in a line of statutes dating to the reign of Queen Elizabeth I. 'This Act, like its predecessor and the Statute of 13 Elizabeth, declares rights and provides remedies for unsecured creditors against transfers that impede them in the collection of their claims.' (Legis. Com. com., 12A [pt. 2] West's Ann. Civ. Code ([2016] ed.) foll. § 3439.01, p. [253].) Under the UFTA, a transfer is fraudulent, both as to present and future creditors, if it is made '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.' (Civ. Code, § 3439.04, subd. (a)[(1)].) Even without actual fraudulent intent, a transfer may be fraudulent as to present creditors if the debtor did not receive 'a reasonably equivalent value in exchange for the transfer' and 'the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.' (Civ. Code, § 3439.05[, subd. (a)].)" (*Mejia v. Reed*, at p. 664.)

"In order for a fraudulent transfer to occur, among other things, there must be a *transfer* of an *asset* as defined in the UFTA. (Civ. Code, § 3439.04; [citation].)" (*Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 841.) "On its face, the UFTA applies to *all transfers*. Civil Code, section § 3439.01, subdivision [(m)] defines '[t]ransfer' as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . .' The UFTA excepts only certain transfers resulting from lease terminations or lien enforcement. (Civ. Code, § 3439.08, subd. (e).)" (*Mejia v. Reed*, *supra*, 31 Cal.4th at

12

p. 664, italics added.) With exceptions not applicable here, "'[a]sset' means property of a debtor." (§ 3439.01, subd. (a).)

Section 3439.07 provides the remedies available to a creditor in an action "against a transfer or obligation." (§ 3439.07, subd. (a).) These remedies include: avoidance of the transfer "to the extent necessary to satisfy the creditor's claim"[7] (§ 3439.07, subd. (a)(1)); attachment or any other provisional remedy against the asset or the property of the transferee under applicable law (*id*., subd. (a)(2)); injunctive relief against the debtor or transferee, or both, to prevent further transfer of the asset or property (*id*., subd. (a)(3)(A)); appointment of a receiver over the asset or property of the transferee (*id*., subd. (a)(3)(B)); and "[a]ny other relief the circumstances may require" (*id*., subd. (a)(1)(C)).

As relevant here, a claim under the UFTA must be filed within seven years of a fraudulent transfer. Section 3439.09(c) provides: "Notwithstanding any other provision of law, a cause of action under this chapter with respect to a transfer or obligation is

---

[7] "'A transfer that would otherwise be voidable as intentionally fraudulent under section 3439.04, subdivision (a)[(1)], is not voidable against a transferee who took in good faith and for a reasonably equivalent value. (Civ. Code, § 3439.08, subd. (a).)' [Citation.]" (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 122.)

extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."**8**

The UFTA supplements existing law.  (Civ. Code, § 3439.12.)  "[A] suit under the UFTA is not the exclusive remedy by which fraudulent transfers may be attacked. Principles of law and equity, including estoppel, fraud, misrepresentation 'or other validating or invalidating cause,' are available to supplement an action under UFTA. [Citations.]" (*Jhaveri v. Teitelbaum* (2009) 176 Cal.App.4th 740, 755.)  "If and as such [a common law] action is brought, the applicable statute of limitations is [Code of Civil Procedure] section 338[, subdivision] (d) and, more importantly, the cause of action accrues not when the fraudulent transfer occurs but when the judgment against the debtor is secured (or maybe even later, depending upon the belated discovery issue)." (*Macedo v. Bosio* (2001) 86 Cal.App.4th 1044, 1051 (*Macedo*).)

However, "*even if* belated discovery can be pleaded and proven" with respect to the statute of limitations applicable to common law remedies for fraudulent transfers, "in

---

**8**  Section 3439.09 provides in its entirety:

"A cause of action with respect to a transfer or obligation under this chapter is extinguished unless action is brought pursuant to subdivision (a) of Section 3439.07 or levy made as provided in subdivision (b) or (c) of Section 3439.07:

"(a)  Under paragraph (1) of subdivision (a) of Section 3439.04, not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

"(b)  Under paragraph (2) of subdivision (a) of Section 3439.04 or Section 3439.05, not later than four years after the transfer was made or the obligation was incurred.

"(c)  Notwithstanding any other provision of law, a cause of action under this chapter with respect to a transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

14

any event the maximum elapsed time for a suit *under either the UFTA or otherwise* is seven years after the transfer. [Citation.]" (*Macedo*, *supra*, 86 Cal.App.4th at p. 1050, fn. 4.) This conclusion logically follows from the language of section 3439.09(c). "[B]y its use of the term '[n]otwithstanding any other provision of law,' the Legislature clearly meant to provide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise." (*Macedo*, at pp. 1050-1051, fn. 4.)

Although the language just quoted from *Macedo* was technically dicta, we agree with two lower federal courts[9] applying the UFTA that it is "well-considered dicta." (*Roach v. Lee* (C.D. Cal. 2005) 369 F.Supp.2d 1194, 1199; *In re JMC Telecom LLC* (C.D. Cal. 2009) 416 B.R. 738, 743; see *California Clean Energy Committee v. City of San Jose* (2013) 220 Cal.App.4th 1325, 1345, fn. 8 ["Though we are not bound by precedents created by other appellate courts, we may find the reasoning set forth in their decisions, *including dicta*, persuasive as to the facts we are presented with on appeal." (Italics added.)].) As one of those federal courts wisely concluded, "it would be inordinate to bar [UFTA] fraudulent transfer claims after seven years while allowing common law fraudulent transfer claims to be brought 'scores of years after the transfer.'" (*Roach v. Lee*, at p. 1199, quoting *Macedo*, *supra*, 86 Cal.App.4th at p. 1050, fn. 4.)

---

[9] Decisions of lower federal courts are not binding on us on matters of state law. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 296.) "But that certainly does not stop us from relying upon [lower] federal court opinions for their cogent reasoning and persuasive value." (*McCann v. Lucky Money, Inc.* (2005) 129 Cal.App.4th 1382, 1396.)

3. PGA West Pleaded a Claim Under the UFTA.

To determine whether section 3439.09(c) barred PGA West's claims against Hulven, we must determine whether this lawsuit was an attempt "to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise." (*Macedo*, *supra*, 86 Cal.App.4th at pp. 1050-1051, fn. 4.) PGA West contends the UFTA does not apply to its lawsuit because it did not allege a "transfer" in its complaint and, more importantly, no such transfer occurred. Instead, PGA West argues the trial court correctly ruled, after trial, that the deed of trust was fictitious, the beneficiary of the trust deed never existed, and Mork never incurred an obligation to Hulven. In addition, PGA West contends the UFTA does not apply because its lawsuit merely sought a declaratory judgment to determine interests in the real property, and not to void a fraudulent transfer.

In its complaint, PGA West alleged the foreclosure sale of the property, should it proceed in the future, would constitute a fraudulent transfer by Mork and Hulven to deprive their creditors of the ability to collect on the judgment liens. PGA West did not allege that the 2004 deed of trust was itself a fraudulent transfer from Mork to Hulven. That PGA West did not expressly plead an already executed fraudulent transfer or specifically allege claims under the UFTA is not dispositive when determining whether section 3439.09(c) applies to this lawsuit. "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of

16

the statute of limitations under our code.' [Citation.]" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23; accord, *Bank of New York Mellon v. Citibank*, *N.A.* (2017) 8 Cal.App.5th 935, 943; *Smith v. Ben Bennett*, *Inc*. (2005) 133 Cal.App.4th 1507, 1525.) Therefore, we must look to the complaint as a whole to determine the gravamen of PGA West's claims.

Read liberally (Code Civ. Proc., § 452), the complaint alleged: Hulven was a completely fictitious entity created and controlled by Mork with a bogus address; Hulven did not even exist when the deed of trust was recorded; Mork and Hulven were one in the same and indistinguishable, and their separate interests (if any) were merged through the deed of trust. The note purportedly secured by the deed of trust was a fake instrument created for the express purpose of advancing Mork's scheme to protect the equity in his condominium from creditors; Mork received no consideration from Hulven for the deed of trust; and Mork incurred no obligation whatsoever under the note and made no payments to Hulven to satisfy any obligation. Despite this clear breach of the note, Hulven did not act to enforce the purported obligation under the note within the applicable statute of limitations.

To underscore the fraudulent nature of the transactions between Mork and Hulven, PGA West alleged the deed of trust naming Hulven as the beneficiary was recorded to defeat potential creditor's claims and "to *launder* Mork's title" to the property. (Italics added.) Indeed, PGA West specifically alleged the deed of trust "was a *fraudulent obligation* incurred by Mork in an attempt to protect Mork's equity in the Property and defeat creditor's claims against the same." (Italics added.)

17

The complaint also alleged that ever since PGA West and the Wyatts recorded their abstracts of judgment, Mork made no payments to satisfy the judgments and avoided all attempts to enforce them. Mork and Hulven conspired with others to ensure Mork's scheme to elude creditors and "launder" his title to the property succeeded by substituting a trustee of the deed of trust and having an employee of Mork's business associate pose as Hulven's president and initiate nonjudicial foreclosure proceedings against Mork, despite the fact Hulven never tried to collect on the note when Mork failed to make even one payment.

Reading the complaint as a whole, and ignoring the labels given to the claims by PGA West, we conclude the gravamen of those claims is that the 2004 deed of trust was a transfer or obligation executed and recorded "[w]ith actual intent to hinder, delay, or defraud" potential creditors such as PGA West and the Wyatts. (§ 3439.04, subd. (a)(1).) Moreover, although PGA West's complaint did not request a decree cancelling the 2004 deed of trust as void, it did pray for a declaration that the deed of trust was void and unenforceable and that PGA West's interest in the property had priority over any interest claimed under the deed of trust. Therefore, notwithstanding that PGA West might have pursued remedies other than those provided by the UFTA, we must conclude PGA West's claims are a common law attack on a fraudulent deed of trust and, therefore, are subject to section 3439.09(c)'s seven-year "overarching, all-embracing maximum time period to attack a fraudulent transfer." (*Macedo*, *supra*, 86 Cal.App.4th at p. 1051, fn. 4.)

PGA West argues the UFTA does not apply because the deed of trust never actually transferred an interest in the property and, therefore, is not a "transfer." Because

18

Mork and Hulven were one and the same and had no distinguishable interests in the property, and because the note and deed of trust never imposed a real obligation on the part of Mork, PGA West contends "[t]here was no transfer to invalidate." We disagree.

In claims brought under the UFTA, plaintiffs often allege the transfer at issue was made by the debtor to a "sham" corporate entity to hide assets from creditors. (See, e.g., *Renda v. Nevarez* (2014) 223 Cal.App.4th 1231, 1234 [judgment debtor transferred assets "to various sham entities" to avoid judgment enforcement]; *Kraft Power Corp. v. Merrill* (Mass. 2013) 981 N.E.2d 671, 677 [transfer to "sham corporations"]; *Vaughan v. Graves* (Okla. 2012) 291 P.3d 623, 625 ["sham corporation"]; *Sterquell v. Scott* (Tex.App. 2004) 140 S.W.3d 453, 460 ["sham entities"].) Transfers to bogus corporations that are wholly owned and controlled by the debtor are "transfers" for purposes of the UFTA. (*National Loan Investors*, *L.P. v. World Properties*, *LLC* (Conn.App.Ct. 2003) 830 A.2d 1178, 1180-1182 [summary judgment for plaintiff affirmed on UFTA claim alleging fraudulent transfer to bogus corporation wholly owned by debtor]; *Goldberg v. Chong* (S.D. Fla. July 11, 2007, No. 07-20931-CIV-HUCK) 2007 U.S. Dist. Lexis 49980, *4-*5 [summary judgment granted to receiver on UFTA claim alleging employee of receivership entity fraudulently entered into employment contract between receivership entity and a bogus corporation of which she was "the found[ing], sole member," "that never actually did any business," and "had no office and had no employees"]; *Woodell v. TransFlorida Bank*

19

(Fla.Dist.Ct.App. 1998) 717 So.2d 108, 110 [UFTA applied to "shell entities known to be acting as alter-egos or agents of the judgment debtors"].)[10]

Moreover, the Legislature envisioned that the type of transaction that occurred in this case would constitute a transfer.[11]  The legislative commentary to section 3439.04, subdivision (b), provides that when considering the so-called "badges of fraud" to determine whether a transfer was made with the actual intent to hinder, delay, or defraud a creditor, "a court should evaluate all the relevant circumstances involving a challenged transfer or obligation.  Thus the court may appropriately take into account all indicia negativing as well as those suggesting fraud, as illustrated in the following reported cases:  [¶]  (a)  Whether the transfer or obligation was to an insider:  Salomon v. Kaiser (*In re* Kaiser), 722 F.2d 1574, 1582-83 (2d Cir. 1983) (insolvent debtor's purchase of two residences in the name of his spouse and the creation of a dummy corporation for the purpose of concealing assets held to evidence fraudulent intent)."  (Assem. Com. on

---

[10]  We are not bound by decisions of sister state courts.  (*Armijo v. Miles* (2005) 127 Cal.App.4th 1405, 1418.)  However, "[i]t is well settled that decisions of sister state courts are particularly persuasive when those decisions construe similar statutes or a uniform act.  [Citation.]" (*San Jose Crane & Rigging, Inc. v. Lexington Ins. Co.* (1991) 227 Cal.App.3d 1314, 1321.)

[11]  On the court's own motion, we took judicial notice of legislative history materials related to Senate Bill No. 2150 (1985-1986 Reg. Sess.), which adopted the UFTA (Stats. 1986, ch. 383).  (Evid. Code, §§ 452, 459.)  (See May 26 & June 5, 2017 orders, attachments A-G.)

20

Finance and Insurance, Rep. on Sen. Bill No. 2150 (1985-1986 Reg. Sess.) 5 Assem. J. (1985-1986 Reg. Sess.) pp. 8577-8578 (Assem. Com. Report),[12] excerpts reprinted at 12A pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 3439.04, pp. 276-277.)  The Legislature's reliance on *Salomon v. Kaiser* is strong evidence that transfers to sham entities with no interest separate from the debtor, in a scheme to defraud creditors, qualify as transfers under the UFTA.

Therefore, although Mork never incurred a real obligation to Hulven under the deed of trust and note, and Hulven apparently never really existed as a corporate entity, Mork's fraudulent attempt to transfer the equity in his condominium to Hulven to insulate that asset from potential creditors constitutes a "transfer" as defined in section 3439.01, subdivision (m).

B.     *PGA West's Claims Were Extinguished by the UFTA's Seven-year Statute or Repose.*

Hulven contends the judgment must be reversed because PGA West's lawsuit was filed after the expiration of the seven-year limitations period set forth in

---

**12** See May 26, 2017 order, *ante*, fn. 11, attachment E.  Normally, legislative committee comments are only persuasive authority when determining the Legislature's intent.  (*McMullen v. Haycock* (2007) 147 Cal.App.4th 753, 759.)  However, the committee comments quoted in this opinion were taken verbatim from the Uniform Laws commissioners' commentary.  (7A pt. II West's U. Laws Ann. (2006) U. Fraudulent Transfer Act, com. to § 4, p. 60; see *id*., com. to § 9, p. 195, cited *post*.)  Therefore, we give substantial weight to the official legislative commentary about the UFTA.  (See *Lundahl v. Telford* (2004) 116 Cal.App.4th 305, 315-316.)

21

section 3439.09(c). PGA West responds that, even if Mork's fraudulent attempt to insulate the equity in his condominium constitutes a "transfer" and triggers the UFTA's limitations period, Hulven "waived"[13] the limitations defense by not rearguing it at trial.[14]

To determine whether Hulven forfeited its defense under section 3439.09(c), we must determine whether that time limitation is a traditional statute of limitations or a statute of repose. "'Statutes of repose and statutes of limitations are often confused, though they are distinct.' [Citation.]" (*Federal Housing Finance Agency v. UBS*

---

[13] "[T]he correct term is 'forfeiture' rather than 'waiver,' because the former term refers to a failure to object or to invoke a right, whereas the latter term conveys an express relinquishment of a right or privilege. [Citations.] As a practical matter, the two terms on occasion have been used interchangeably. [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1.) In a number of the decisions that we cite in this opinion, the court used the term "waiver" when referring to a failure to object or invoke a right. Except for when quoting from those decisions, we will use the more precise term "forfeiture" when addressing those decisions.

[14] There is some authority to support Hulven's position that raising section 3439.09(c) in its demurrer was sufficient to preserve the issue on appeal. (*McCauley v. Howard Jarvis Taxpayers Assn.* (1998) 68 Cal.App.4th 1255, 1263-1264 [party that raised statute of limitations defense in unsuccessful demurrer did not need to reargue it at trial to preserve the defense on appeal].) But there is also authority that cuts the other way. (See *RRLH, Inc. v. Saddleback Valley Unified School Dist.* (1990) 222 Cal.App.3d 1602, 1605-1606, fn. 2 [stating, in dicta, that a statute of limitations defense pleaded in an answer but not argued at trial was forfeited]; *Van Buskirk v. Todd* (1969) 269 Cal.App.2d 680, 690 [defendant forfeited statute of limitations defense pleaded in answer by not including the defense in a pretrial conference order of issues to be decided at trial].) Because we conclude section 3439.09(c) is a statute of repose that may not be forfeited, we need not decide whether Hulven properly preserved the defense by asserting it in a demurrer and pleading it in an answer.

22

*Americas Inc.* (2d Cir. 2013) 712 F.3d 136, 140.)  We conclude section 3439.09(c) is a statute of repose that is not subject to forfeiture, and that PGA West's claims were completely extinguished when the seven-year period expired.[15]

> 1.      Statutes of limitations versus statutes of repose.

"'Statute of limitations' is the 'collective term . . . commonly applied to a great number of acts,' or parts of acts, that 'prescribe the periods beyond which' actions 'may not be brought.'  [Citation.]"  (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 532; see 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 430, p. 546.)  "There are several policies underlying such statutes.  One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.'  [Citations.]  A statute of limitations also stimulates plaintiffs to pursue their claims diligently.  [Citations.]  A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural

---

[15]  In its main briefs, Hulven cited lower federal court decisions for the proposition that section 3439.09(c) is a statute of repose, but it did not address how that characterization affected PGA West's forfeiture argument.  For its part, PGA West ignored the decisions cited by Hulven and characterized section 3439.09(c) as a statute of limitations that is "waived," i.e., forfeited, if not timely asserted in the trial court.  We directed the parties to file supplemental briefs addressing:  (1) whether section 3439.09(c) is a statute of limitations or a statute of repose, and (2) whether a statute of repose is subject to the forfeiture doctrine.

23

grounds. [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.)

Generally speaking, a garden variety[16] statute of limitations is procedural and merely affects a remedy and not a substantive right or obligation. (*Mitchell v. Auto. etc. Underwriters* (1941) 19 Cal.2d 1, 4; *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 733; 3 Witkin, Cal. Procedure, *supra*, Actions, § 432, pp. 549-550.) Because a statute of limitations is an affirmative defense, it is forfeited if it is not properly asserted in a general demurrer or pleaded in an answer. (*Minton v. Cavaney* (1961) 56 Cal.2d 576, 581; *Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1314.) Moreover, statutes of limitations are subject to statutory and equitable tolling. (3 Witkin, Cal. Procedure, *supra*, Actions, § 432, p. 550.)

"For various reasons of policy, some time provisions, although in form similar to statutes of limitations, are treated as conditions on the substantive right, i.e., they cause the right that previously arose and on which an action could have been maintained, to expire. [Citations.]" (3 Witkin, Cal. Procedure, *supra*, Actions, § 441, p. 561; see *Williams v. Pacific Mutual Life Ins. Co.* (1986) 186 Cal.App.3d 941, 949.) One such class of time limitations are statutes of repose. "Statutes of repose effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.' [Citations.] Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability." (*CTS Corp. v. Waldburger* (2014) 573 U.S. ___, ___ [134 S.Ct. 2175, 2183] (*CTS Corp.*).) As the United States Supreme

---

[16] See *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 373.

24

Court recently explained, whereas statutes of limitations are designed to encourage plaintiffs to act diligently in prosecuting known injuries or claims, and normally provide that a cause of action accrues when the plaintiff is injured or discovers an injury, "statutes of repose are enacted to give more explicit and certain protection to defendants. These statutes 'effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.'" (*California Public Employees' Retirement System v. ANZ Securities*, *Inc.* (2017) ___ U.S. ___, ___ [137 S.Ct. 2042, 2049] (*ANZ Securities*), quoting *CTS Corp.*, at p. 2183.) "For this reason," the court continued, "statutes of repose begin to run on 'the date of the last culpable act or omission of the defendant.'" (*ANZ Securities*, at p. 2049, quoting *CTS Corp.*, at p. 2182.)

"'[W]hile a statute of limitations normally sets the time within which proceedings must be commenced once a cause of action accrues, [a] statute of repose limits the time within which an action may be brought and is not related to accrual. Indeed, "the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, [the] period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." [Citation.]'" (*McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 78-79, fn. 2, quoting *Giest v. Sequoia Ventures*, *Inc.* (2000) 83 Cal.App.4th 300, 305; accord, *Cossman v. DaimlerChrysler Corp.* (2003) 108 Cal.App.4th 370, 379, fn. 8.)

Whereas statutes of limitations affect a remedy, statutes of repose extinguish a right of action after the period has elapsed. (*Stuart v. Am. Cyanamid Co.* (2d Cir. 1998)

25

158 F.3d 622, 627; 51 Am.Jur.2d (2011) Limitation on Actions, § 354, pp. 762-763

["a statute of repose . . . nullifies both the right and the remedy"]; *id*. § 24, p. 507 [statute

of repose "extinguishes the action, or terminates any right to action, after a fixed period

of time has elapsed" (fns. omitted)].)  The effect of a statute of repose "'is [thus] harsher

than a statute of limitations in that it cuts off a right of action after a specified period of

time, irrespective of accrual or even notice that a legal right has been invaded.

[Citation.]'" (*McCann v. Foster Wheeler LLC*, *supra*, 48 Cal.4th at p. 78, fn. 2, quoting

*Giest v. Sequoia Ventures*, *Inc*., *supra*, 83 Cal.App.4th at p. 305.)  Put another way, a

statute of repose "'does not cut off an existing right of action, but rather provides that

nothing which happens thereafter can *be* a cause of action.'" (*San Diego Unified*

*School Dist*. *v. County of San Diego* (2009) 170 Cal.App.4th 288, 301, quoting *Inco*

*Development Corp*. *v. Superior Court* (2005) 131 Cal.App.4th 1014, 1020; accord,

*CTS Corp*., *supra*, 573 U.S. at p. ___ [134 S.Ct. at p. 2187] [a statute of repose "mandates

that there shall be no cause of action beyond a certain point, even if no cause of action

has yet accrued.  Thus, a statute of repose can prohibit a cause of action from coming into

existence."].)

    Although the defendant must plead a statute of limitations defense to avoid

forfeiture, it is the *plaintiff* who must plead facts showing their substantive right has not

been extinguished by a statute of repose. (*Williams v. Pacific Mutual Life Ins*. *Co*.,

*supra*, 186 Cal.App.3d at pp. 949-950; 3 Witkin, Cal. Procedure, *supra*, Actions, § 441,

p. 561; 51 Am.Jur.2d, *supra*, Limitation on Actions, §§ 377-378, pp. 786-787.)  And

unlike a procedural statute of limitations, substantive statutes of repose are generally *not*

26

subject to statutory or equitable tolling.  (*ANZ Securities*, *supra*, ___ U.S. at pp. ___ [137 S.Ct. at pp. 2050-2051; *CTS Corp.*, *supra*, 573 U.S. at pp. ___ [134 S.Ct. at pp. 2183, 2187]; *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681, 689-690; Turner & Banke, Cal. Practice Guide:  Civil Procedure Before Trial Statutes of Limitations (The Rutter Group 2017) ¶ 1:32, p. 1-4.)

       2.     Section 3439.09(c) is a statute of repose.

When determining whether section 3439.09(c) is a statute of limitations or a statute of repose, we must apply standard rules of statutory interpretation.  "Statutory interpretation is a question of law that we review de novo.  [Citation.]  'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'  [Citation.]"  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

Whether section 3439.09(c) is a procedural statute of limitations or a statute of repose is an issue of first impression in California.  Courts of this state have tended to refer to section 3439.09 in its entirety as a statute of limitations.  (See, e.g., *Macedo*,

27

*supra*, 86 Cal.App.4th at p. 1047; *Monastra v. Konica Business Machines*, *U.S.A.*, *Inc.* (1996) 43 Cal.App.4th 1628, 1645; *Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 926 (*Cortez*).)[17]

Lower federal courts applying California's UFTA, however, have been more careful when addressing section 3439.09's different subdivisions. "Cal. Civ. Code § 3439.09(a) and (b) are statutes of limitation requiring a plaintiff to file a fraudulent transfer action within four years of the transfer or, for an intentional fraud, within one year after the transfer was or could reasonably have been discovered." (*Rund v. Bank of Am. Corp.* (*In re EPD Inv. Co., LLC*) (Bankr. 9th Cir. 2015) 523 B.R. 680, 685, citing *In re JMC Telecom LLC*, *supra*, 416 B.R. at p. 742 & *Macedo*, *supra*, 86 Cal.App.4th at p. 1050, fn. 4.) "In contrast to subdivisions (a) and (b), the seven year time limitation set

---

[17] CACI No. 4208 and its use notes, which PGA West cites in its supplemental brief, refers to section 3439.09 in its entirety as a statute of limitations and an "affirmative defense." (Judicial Council of Cal., Civ. Jury Instns. (2017 ed.) CACI No. 4208, p. 975.) Although official jury instructions adopted by the Judicial Council are entitled to some weight (see Cal. Rules of Court, rule 2.1050), they are not authoritative. "'[J]ury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent. They should not be cited as authority for legal principles.'" (*LAOSD Asbestos Cases* (2016) 5 Cal.App.5th 1022, 1049, quoting *People v. Morales* (2001) 25 Cal.4th 34, 48 fn. 7.)

28

forth in Cal. Civ. Code § 3439.09(c) is a statute of repose." (*Rund v. Bank of Am. Corp.* (*In re EPD Inv. Co., LLC*), *supra*, 523 B.R. at p. 686, citing *Donell v. Keppers* (S.D. Cal. 2011) 835 F.Supp.2d 871, 877.)[18]

We agree with the federal courts that have concluded section 3439.09(c) is a statute of repose. That section provides that a cause of action to void a fraudulent transfer is "*extinguished*" if it is not filed "within seven years after the transfer was made or the obligation was incurred." (§ 3439.09(c), italics added.) On its face, section 3439.09(c) is ambiguous with regard to what is extinguished by the passage of the seven-year period—the remedy or the right of action itself. But the legislative history makes clear the Legislature intended expiration of the limitations period to extinguish the right or obligation involved. "Its purpose is to make clear that lapse of the statutory periods prescribed by [section 3439.09] *bars the right and not merely the remedy*."

---

[18] Accord, *Jenner v. Neilson* (*In re Slatkin*) (9th Cir. 2007) 222 Fed.Appx. 545, 547; *Forum Ins. Co. v. Comparet* (9th Cir. 2003) 62 Fed.Appx. 151, 152; *Ezra v. Seror* (*In re Ezra*) (Bankr. 9th Cir. 2015) 537 B.R. 924, 934-935; *McFarland v. Cal. Bank & Trust* (*In re Int'l Mfg. Grp., Inc.*) (Bankr. N.D. Cal. Dec. 6, 2016, No. 14-25820-D-11) 2016 Bankr. Lexis 4192, *39; *Luria v. Wolff* (C.D. Cal. Apr. 11, 2016, No. CV 15-09191-RSWL-GJSx) 2016 U.S. Dist. Lexis 49231, *12; *Weil v. U.S.* (*In re Tag Entertainment Corp.*) (Bankr. C.D. Cal. Mar. 29, 2016, No. 1:09-bk-26982-VK) 2016 Bankr. Lexis 982, *45; *Donell v. Mojtahedian* (C.D. Cal. 2013) 976 F.Supp.2d 1183, 1189 (applying § 3439.09(c), but mislabeling it § 3439.09, subd. (a)); *Internet Direct Response, Inc. v. Buckley* (C.D. Cal. Mar. 7, 2011, No. SA CV 09-1335 ABC (MLG)) 2011 U.S. Dist. Lexis 28344, *20-*21; *In re JMC Telecom LLC*, *supra*, 416 B.R. at p. 742; *Rooz v. Kimmell* (*In re Kimmel*) (Bankr. N.D. Cal. 2007) 367 B.R. 166, 169; see Pilmer & Cramer, *Swindlers' List* (June 2009) 32 L.A. Lawyer 22, 27 ("California law provides a seven-year statute of repose for intentionally fraudulent transfer claims").

(Assem. Com. Report, *supra*, 5 Assem. J. (1985-1986 Reg. Sess.) p. 8586, italics added, excerpts reprinted at 12A pt. 2 West's Ann. Civ. Code, *supra*, foll. § 3439.09, p. 386; see 7A pt. II West's U. Laws Ann., *supra*, U. Fraudulent Transfer Act, com. to § 9, p. 195.)[19]

Moreover, on its face, section 3439.09(c) does not provide for tolling. As one United States District Court concluded: "'The phrase "notwithstanding any other provision of law" [in section 3439.09(c)] is a "term of art" that "expresses a legislative intent to have the specific statute control despite the existence of other law which might otherwise govern."' [Citation.] Therefore, 3439.09(c)'s seven-year backstop 'is absolute,' and 'it cannot be tolled or otherwise extended.' [Citations.]" (*Donell v. Keppers*, *supra*, 835 F.Supp.2d at p. 878.)

PGA West argues section 3439.09(c) is not a statute of repose because it is not a substantive limit on the plaintiff's right of action. Citing *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 (*Hartford*) (superseded by statute), PGA West compares section 3439.09(c) to Code of Civil Procedure section 337.15 and argues both are procedural statute of limitations. Code of Civil Procedure section 337.15, when construed with Code of Civil Procedure sections 337 and

---

**19** The Assembly Committee comments also indicate that, prior to the adoption of section 3439.09, limitations periods applicable to actions to void fraudulent transfers varied widely. Section 3439.09 was adopted to "mitigate the uncertainty" that resulted from such a diversity of limitations periods. (Assem. Com. Report, *supra*, 5 Assem. J. (1985-1986 Reg. Sess.) pp. 8586-8587, excerpts reprinted at 12A pt. 2 West's Ann. Civ. Code, *supra*, foll. § 3439.09, p. 386; see 7A pt. II West's U. Laws Ann., *supra*, U. Fraudulent Transfer Act, com. to § 9, p. 195.)

338, provides a "two-step limitation:  actions founded upon a latent defect in the development of real property must be filed within three or four years of discovery, depending on whether the action rests on breach of warranty or negligence, but in any case within ten years of the date of substantial completion of the improvement." (*Hartford*, at p. 641.)

The Supreme Court in *Hartford*, *supra*, 21 Cal.3d 624, rejected the argument that Code of Civil Procedure section 337.15 is a substantive limitation on a plaintiff's right of action as opposed to a procedural statute of limitations.  (*Hartford*, at pp. 639-640.)  In passing, the court noted, "An identical argument . . . could be raised with respect to every statute of limitations." (*Id*. at p. 640.)  According to PGA West, section 3439.09 is similar to Code of Civil Procedure section 337.15 in that both provide for shorter limitations periods that accrue when the plaintiff learns of the injury, but they nonetheless provide a longer, overarching limitations period in which the plaintiff must file suit. Because the Supreme Court concluded Code of Civil Procedure section 337.15 is a run-of-the-mill statute of limitations, PGA West contends we should do the same with respect to section 3439.09(c).

A closer look at *Hartford*, *supra*, 21 Cal.3d 624, shows it is inapt.  "The issue there was whether the surety on a contractor's bond—then not among the persons specifically mentioned in the statute—nonetheless could claim the protection of [Code Civil Procedure] section 337.15's 10-year limitations period.  The [*Hartford*] majority answered that question no.  [Citation.]  The dissenters argued that because [Code Civil Procedure] section 337.15 was a substantive limit on legal rights and duties, it precluded

31

the plaintiff, in any suit brought after expiration of the 10-year period, from proving a contractor's breach of duty which the surety must make good. [Citation.]" (*Lantzy v. Centex Homes*, *supra*, 31 Cal.4th at p. 381.) It was in *that* specific context that the Supreme Court rejected the argument that Code of Civil Procedure section 337.15 was a substantive limitation on the plaintiff's right of action. (*Lantzy*, at p. 381.) Courts have since limited the reach of the language from *Hartford* that PGA West relies upon, for example, concluding it does not provide support for the proposition that the 10-year limitation period under Code of Civil Procedure section 337.15 is subject to equitable tolling. (*Lantzy*, at p. 381; *FNB Mortgage Corp. v. Pacific General Group* (1999) 76 Cal.App.4th 1116, 1131-1132.) Moreover, whereas section 3439.09(c) completely extinguishes a plaintiff's right of action and not merely the remedy of setting aside a fraudulent transfer, which is one of the hallmarks of a statute of repose, nothing in *Hartford* suggested that Code of Civil Procedure section 337.15 similarly extinguished a plaintiff's right of action. Therefore, we conclude *Hartford* provides no support for PGA West's position that section 3439.09(c) is a run-of-the-mill statute of limitations.

Next, PGA West cites *Cortez*, *supra*, 52 Cal.App.4th 917 and *Macedo*, *supra*, 86 Cal.App.4th 1044, for the proposition that section 3439.09(c) is subject to tolling and, therefore, is not a statute of repose. Again, we are not persuaded.

In *Cortez*, *supra*, 52 Cal.App.4th 917, the defendant made a fraudulent transfer in August 1987 while an underlying lawsuit to establish its liability was still pending but before the judgment became final. (*Id*. at p. 920-924.) The plaintiff's action to set aside the fraudulent transfer was filed in April 1993. (*Id*. at p. 924.) The issue there was

32

whether the four-year statute of limitations under section 3439.09, subdivision (a), to set aside a fraudulent transfer began to run when the fraudulent transfer was made, or whether the time to challenge a fraudulent transfer was tolled until the judgment establishing the underlying debt became final. (*Cortez*, at p. 929.) The Court of Appeal concluded: the UFTA is cumulative to existing common remedies to set aside fraudulent transfers; common law remedies to set aside fraudulent transfers are governed by the three-year statute of limitations under Code of Civil Procedure section 338, subdivision (d), which provides for tolling until the party challenging the transfer obtains a final judgment on the underlying debt; and the tolling principle applicable to common law actions to set aside fraudulent transfers applies equally to the four-year statute of limitations under section 3439.09, subdivision (a). (*Cortez*, at pp. 930-937.) Because the lawsuit to set aside the fraudulent transfer was filed less than four years after the underlying judgment became final, the court concluded the lawsuit was not time-barred under section 3439.09, subdivision (a). (*Cortez*, at p. 937.)

*Cortez*, *supra*, 52 Cal.App.4th 917, is not particularly helpful here because in that case the lawsuit to set aside a fraudulent transfer was filed less than seven years after the transfer was made. Although the Court of Appeal mentioned and quoted section 3439.09(c) in passing (*Cortez*, at pp. 919, 926-927), it had no occasion whatsoever to decide whether the common law tolling principle applicable to section 3439.09, subdivision (a), applied to section 3439.09(c) as well. Moreover, the fact that section 3439.09 includes shorter statutes of limitations, which are subject to regular discovery and tolling rules, *and* a longer statute of repose, which is not subject to

33

those rules, is not anomalous in the least. "The pairing of a shorter statute of limitations and a longer statute of repose is a common feature of statutory time limits. [Citation.] The two periods work together: The discovery rule gives leeway to a plaintiff who has not yet learned of a violation, while the rule of repose protects the defendant from an interminable threat of liability. [Citation.]" (*ANZ Securities*, *supra*, ___ U.S. at pp. ___ [137 S.Ct. at pp. 2049-2050.)

As for *Macedo*, *supra*, 86 Cal.App.4th 1044, the fraudulent transfers in that case were made in September and December 1993, after the underlying June 1992 judgment was entered but before it was completely satisfied. (*Id*. at p. 1046.) The plaintiff filed suit in July 1999 to set aside the fraudulent transfers, and the defendant argued the suit was barred by the four-year statutes of limitations under section 3439.09, subdivisions (a) and (b). (*Macedo*, at p. 1048.) Applying the reasoning from *Cortez*, the court concluded: the UFTA supplements common law causes of action to challenge fraudulent transfers; and a common law cause of action is governed by the three-year statute of limitations under Code Civil Procedure section 338, subdivision (d), which does not begin to run until the underlying judgment establishing liability becomes final. (*Macedo*, at pp. 1048-1052.)

Although the lawsuit to set aside the fraudulent transfers in *Macedo* was filed less than seven years after the transfers were made, as noted *ante*, the Court of Appeal did have occasion to discuss, albeit in dicta, the effect of section 3439.09(c) on *all* lawsuits to challenge fraudulent transfers. Although the appellate court agreed with the plaintiff that section 3439.09 was not the exclusive statute of limitations applicable to fraudulent

34

transfer actions, the court made clear that "*even if* belated discovery can be pleaded and proven" with respect to section 3439.09, subdivision (a), and the statute of limitations applicable to common law remedies for fraudulent transfers, "in any event the maximum elapsed time for a suit *under either the UFTA or otherwise* is seven years after the transfer. [Citation.]" (*Macedo*, *supra*, 86 Cal.App.4th at p. 1050, fn. 4.) The court's conclusion followed ineluctably from the plain language of section 3439.09(c). "[B]y its use of the term '[n]otwithstanding any other provision of law,' the Legislature clearly meant to provide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise." (*Macedo*, at pp. 1050-1051, fn. 4.) For the reasons stated, *ante*, we agree with *Macedo*'s "well-considered dicta" (*Roach v. Lee*, *supra*, 369 F.Supp.2d at p. 1199; *In re JMC Telecom LLC*, *supra*, 416 B.R. at p. 743) and decline PGA West's invitation to read *Macedo* as suggesting the seven-year limitation under section 3439.09(c) is subject to tolling.[20]

The legislative history to section 3439.09 supports our conclusion that the seven-year limitation under section 3439.09(c) was intended as an absolute limit on actions to challenge fraudulent transfers that cannot be tolled or otherwise extended. As introduced, the bill that adopted the UFTA in California included almost verbatim the limitations

---

[20] PGA West also relies on *Fidelity National Financial*, *Inc*. *v. Friedman* (C.D. Cal. Apr. 27, 2009, No. CV 06-4271 CAS (JWJx)) 2009 U.S. Dist. Lexis 40732, *40-*46, where the federal district court applied the reasoning of *Cortez* to conclude section 3439.09(c) is subject to tolling. The court there ignored the contrary dicta in *Macedo* and the reasoned conclusions of other district courts that section 3439.09(c) was intended to be an absolute limit on fraudulent transfer actions and is not subject to further extension by tolling. For the reasons stated in the text, we respectfully disagree with *Fidelity National*.

period recommended by the Uniform Laws commissioners, which did not include an all-encompassing statute of repose. At that stage, section 3439.09 read as follows: "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: [¶] (a) Under paragraph (1) of subdivision (a) of Section 3439.04 within, four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant. [¶] (b) Under paragraph (2) of subdivision (a) of Section 3439.04 or subdivision (a) of Section 3439.05, within four years after the transfer was made or the obligation was incurred. [¶] (c) Under subdivision (b) of Section 3439.05, within one year after the transfer was made or the obligation was incurred." (Sen. Bill No. 2150 (1985-1986 Reg. Sess.) as introduced Feb. 20, 1986, p. 9;[21] see 7A pt. II West's U. Laws Ann., *supra*, U. Fraudulent Transfer Act, § 9, p. 194.)

A committee of the Business Law Section of the State Bar of California, which studied the UFTA, had expressed concern that the limitations period recommended by the Uniform Laws commissioners (Section 9, which became Civ. Code, § 3439.09) overlooked future creditors and did not include an "absolute termination date for creditors to challenge the transfer, *especially since it is unknown when a future creditor will discover the fraud.*" (Report of the Ad Hoc Committee of the Business Law Section of

---

[21] See May 26, 2017 order, *ante*, fn. 11, attachment A.

the State Bar of California on the Proposed Adoption in California of the Uniform Fraudulent Transfer Act (Dec. 12, 1985) pp. 18-19 (Business Law Section Report), italics added.)[22]  "[T]o provide certainty for parties dealing with transferees," the bar committee recommended that "an *absolute deadline* of ten years be imposed on *any creditor's* right to challenge *any transfer*." (Business Law Section Report, at p. 19, italics added.)  The bar committee proposed an entirely new subdivision (c):  "Notwithstanding anything herein to the contrary, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within ten years after the transfer was made or the obligation was incurred." (*Ibid.*)

While the Senate Judiciary Committee was considering Senate Bill No. 2150, the State Bar forwarded the Business Law Section Report to the author of the bill and to the Judiciary Committee.  (State Bar of California Legislative Representative Judith A. Harper, letter to Senator Robert Beverly, May 1, 1986.)[23]  In response, the Judiciary Committee amended Assembly Bill No. 2150 to include a seven-year limitation period in language substantially similar to that proposed by the bar committee.  (Sen. Bill No. 2150

---

[22]  See May 26, 2017 order, *ante*, fn. 11, attachment B.

[23]  See May 26, 2017 order, *ante*, fn. 11, attachment C.

37

(1985-1986 Reg. Sess.) as amended May 8, 1986[24]; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2150 (1985-1986 Reg. Sess.) as introduced Feb. 20, 1986, pp. 4-5;[25] Sen. Final History (1985-1986 Reg. Sess.) p. 1381[26].)  As amended, section 3439.09(c) read:  "Notwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made made [*sic*] within seven years after the transfer was made or the obligation was incurred."  (Sen. Bill No. 2150 (1985-1986 Reg. Sess.) as amended May 8, 1986, p. 8, italics omitted.)  That language remained unchanged when the Legislature adopted and the Governor signed the UFTA into law.  (Stats. 1986, ch. 383, § 2, p. 1593.)  Minor amendments have been made to section 3439.09(c) since then, but in substance its language has remained the same.  (Stats. 2005, ch. 34, § 2 [deleting extra word "made"]; Stats. 2015, ch. 44, § 11 [making technical, nonsubstantive changes].)

Interpreting section 3439.09(c) to provide for tolling, as suggested by PGA West, would undermine the certainty to debtors that the absolute seven-year limitation was intended to afford.  Therefore, we must reject that interpretation.  Because

---

[24]  See May 26, 2017 order, *ante*, fn. 11, attachment D.

[25]  See June 5, 2017 order, *ante*, fn. 11, attachment G.

[26]  See May 26, 2017 order, *ante*, fn. 11, attachment F.

38

section 3439.09(c) was intended to completely extinguish a right of action and not merely a remedy, and because it does not provide for tolling or delayed discovery, we conclude that limitations period is a statute of repose and not merely a statute of limitations.[27]

3.  Statutes of repose cannot be forfeited.

As noted, *ante*, traditional statutes of limitations are considered affirmative defenses that are subject to the forfeiture doctrine.  We have found no published California decision addressing whether a statute of repose is also subject to forfeiture.[28] The majority view among other jurisdictions, which we adopt, holds that statutes of repose cannot be forfeited.

---

[27] Hulven relied exclusively on section 3439.09(c) in its demurrer and on appeal, so we have no occasion to decide whether section 3439.09, subdivisions (a) and (b), are also statutes of repose.

[28] As PGA West points out in its supplemental brief, there is considerable California authority for the proposition that a party may contractually agree to modify the length of a statute of repose. (E.g., *Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1262-1263; *Zamora v. Lehman* (2013) 214 Cal.App.4th 193, 205-211; *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430-1431; *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1548; see 3 Witkin, Cal. Procedure, *supra*, Actions, § 441, p. 562.)  That line of decisions relied on *Tebbets v. Fidelity and Casualty Co.* (1909) 155 Cal. 137, which characterized statutes of limitations *as* statutes of repose that were mere personal rights and could be contractually bargained away. (*Id.* at p. 139.)  Neither *Tebbets* nor the decisions following it discussed the differences between procedural statutes of limitations that merely bar a remedy and are subject to tolling, and statutes of repose that completely extinguish a right or obligation and are not subject to tolling.  We need not question in this case whether those cases were correctly decided because they addressed a knowing "waiver" (see, *ante*, fn. 13) of a limitations period by contract and are, therefore, not authority for the proposition that a statute of repose is subject to *forfeiture*.  To the extent *Hambrecht* suggested in dicta that a statute of repose is subject to forfeiture if a defendant does not timely raise it in the trial court (*Hambrecht*, at p. 1548, fn. 16, citing *Minton v. Cavaney*, *supra*, 56 Cal.2d at p. 581), we respectfully decline to follow that decision.

39

A minority of jurisdictions adhere to the rule that statutes of repose, like statutes of limitations, are affirmative defenses that are subject to the forfeiture doctrine. (E.g., *Pratcher v. Methodist Healthcare Memphis Hospitals* (Tenn. 2013) 407 S.W.3d 727, 737-738; *McRaith v. BDO Seidman, LLP* (Ill.App.Ct. 2009) 909 N.E.2d 310, 327; *Johnston v. Hudlett* (Fl.Dist.Ct.App. 2010) 32 So.3d 700, 704; see *Dominguez v. Lanham Machinery Co., Inc.* (W.D. Mich. 2000) 122 F.Supp.2d 852, 853 [collecting cases]; 54 C.J.S. (2010) Limitations of Actions, § 28, p. 45 & fn. 15 [relying on Illinois decisions for proposition that "[s]tatutes of repose are affirmative defenses subject to forfeiture if not asserted"].)

"[T]he prevailing rule," however, "is that a statute of repose is not an affirmative defense that needs to be pleaded in a defendant's answer to avoid waiver [i.e., forfeiture]." (*Chang-Williams v. U.S.* (D.Md. 2013) 965 F.Supp.2d 673, 694, fn. 9, citing *Roskam Baking Co., Inc. v. Lanham Mach. Co.* (6th Cir. 2002) 288 F.3d 895, 902-904 & *Am. Fed'n of Teachers, AFL-CIO v. Bullock* (D.D.C. 2009) 605 F.Supp.2d 251, 261.)[29] In fact, the lower federal courts have adopted the majority rule against forfeiture of statutes of repose when applying section 3439.09(c) and other state's versions of the UFTA. (*Weil v. U.S.* (*In re Tag Entertainment Corp.*), *supra*, 2016 Bankr. Lexis 982

---

[29] Accord, *Lewis v. Russell* (E.D. Cal. 2012) 838 F.Supp.2d 1063, 1069; *Whittaker v. Todd* (N.C.Ct.App. 2006) 625 S.E.2d 860, 862; *Trax-Fax, Inc. v. Hobba* (Ga.Ct.App. 2006) 627 S.E.2d 90, 95-96; *Ray & Sons Masonry Contractors, Inc. v. U.S. Fidelity & Guaranty Co.* (Ark. 2003) 114 S.W.3d 189, 199-200; *G&P Trucking v. Parks Auto Sales Service & Salvage, Inc.* (S.C.Ct.App. 2003) 591 S.E.2d 42, 45; *Vargo v. Koppers Co., Inc.* (Penn. 1998) 715 A.2d 423, 425, footnote 1; see 51 Am.Jur.2d, *supra*, Limitation on Actions, section 352, at page 767, section 345, at pages 762-763, and section 385, at page 792.

at \*45, quoting *Donell v. Keppers*, *supra*, 835 F.Supp.2d at p. 877 ["'Unlike a traditional statute of limitations, a statute of repose cannot be waived [i.e., forfeited].'"]; *Warfield v. Alaniz* (D.Ariz. 2006) 453 F.Supp.2d 1118, 1130 ["Unlike a traditional statute of limitations, the statute of repose contained in the [Arizona] UFTA cannot be waived [i.e., forfeited]."]; see *Klein v. Capital One Financial Corp.* (D.Idaho July 29, 2011, No. 4:10-CV-00629-EJL) 2011 U.S. Dist. Lexis 83905, \*22, fn. 5 [quoting *Warfield* as persuasive authority when interpreting statute of repose under Idaho's UFTA].)

As one leading decision adopting the majority view explained: "'While the running of a statute of limitations will nullify a party's remedy, the running of a statute of repose will extinguish both the remedy and the right. The statute of limitations is therefore a procedural mechanism, which may be waived [i.e., forfeited]. On the other hand, the statute of repose is a substantive provision which may not be waived [i.e., forfeited] because the time limit expressly qualifies the right which the statute creates.'" (*Roskam Baking Co., Inc. v. Lanham Mach. Co.*, *supra*, 288 F.3d at pp. 902-903, quoting *Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.* (Del. 1985) 489 A.2d 413, 421.)

We find the reasoning behind the majority view to be persuasive. As noted, expiration of the seven-year repose period in section 3439.09(c) completely extinguishes a party's *right*, not just the remedy of voiding a fraudulent transfer. (Assem. Com. Report, *supra*, 5 Assem. J. (1985-1986 Reg. Sess.) p. 8586, excerpts reprinted at 12A pt. 2 West's Ann. Civ. Code, *supra*, foll. § 3439.09, p. 386.) That maximum limitation period is absolute and is not subject to tolling or delayed discovery. To hold that an otherwise *extinguished* right is resurrected, Lazarus-like, simply because a defendant fails

41

to timely assert the limitations period would frustrate the goal of providing defendants with complete repose once the statutory period expires. (See *CTS Corp.*, *supra*, 573 U.S. at p. ___ [134 S.Ct. at p. 2183].) Therefore, we conclude a statute of repose is not subject to forfeiture.

Because a statute of repose cannot be forfeited, we must reject PGA West's argument that Hulven forfeited its defense under section 3439.09(c) by not arguing it at trial.

4. PGA West sued Hulven more than seven years after the deed of trust was executed.

Having concluded section 3439.09(c) is a statute of repose that may not be forfeited, we must also conclude that PGA West's claims with respect to the deed of trust were extinguished before it filed suit. The deed of trust was recorded on January 28, 2004. The absolute last day an action could have been filed to attack the deed of trust, under the UFTA or not, was January 27, 2011. (§ 3439.09(c); *Macedo*, *supra*, 86 Cal.App.4th at pp. 1050-1051, fn. 4.) PGA West did not file its complaint until

March 4, 2013, more than nine years after the deed of trust was recorded.**30**  In other words, PGA West's right of action on the deed of trust had already been completely extinguished.

PGA West contends our conclusion will lead to absurd results because it is "a license to commit fraud."  We must, of course, interpret statutes to avoid anomalous or absurd results that the Legislature could not have intended and that would frustrate the Legislature's intent.  (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 522; *People v. Birkett* (1999) 21 Cal.4th 226, 231.)  But "[w]e must exercise caution using the 'absurd result' rule; otherwise, the judiciary risks acting as a '"super-Legislature"' by rewriting statutes to find an unexpressed legislative intent.  [Citation.]" (*California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 588.)  In any event, although the

---

**30**  Relying on the United States Supreme Court's recent explication that a statute of repose does not begin to run until the defendant's "'last culpable act'" (*ANZ Securities*, *supra*, ___ U.S. at p. ___ [137 S.Ct. at p. 2049], quoting *CTS Corp.*, *supra*, 573 U.S. at p. ___ [134 S.Ct. at p. 2182]), counsel for PGA West seemed to suggest during oral argument that a statute of repose does not begin to run until the very last act or omission by the defendant *of any kind*, which in this case would be acts allegedly committed by Hulven and Mork years after the deed of trust was recorded.  We disagree.  By culpable act, we assume the high court meant the last act or omission giving rise to the cause of action tied to the relevant statute of repose, which in this case is a fraudulent transfer. (§§ 3439.04, subd. (a)(1), 3439.01, subd. (m), 3439.09(c).)  The only fraudulent transfer alleged in the complaint is the deed of trust recorded against the property by Mork that named Hulven as the beneficiary.  Therefore, the deed of trust *is* the last culpable act for purposes of this case, and it triggered the seven-year statute of repose under section 3439.09(c).

result in this case is lamentable, the legislative history discussed above demonstrates it is not absurd or unanticipated.**31** (See *People v. Lee* (2017) 11 Cal.App.5th 344, 352 ["Neither the Attorney General nor [the defendant] discuss the statute's legislative history. After conducting our own review, we conclude the Legislature intended the result the Attorney General characterizes as 'absurd' or 'inconsistent.'"]; *Jackson v. Doe*

---

**31** While this appeal was pending, Hulven petitioned this court for a writ of supersedeas to prevent PGA West from foreclosing on a lien placed on the property for delinquent homeowner's association assessments. We denied the petition without prejudice to Hulven requesting a stay from the trial court.

Either Hulven did not request a stay in the trial court or the trial court denied the stay, because during oral argument before this court counsel for PGA West informed us that it foreclosed on the property and now owns it. Counsel for Hulven did not contradict this assertion of fact. Normally we are limited to the facts in the record on appeal and we will not consider events that occur after the judgment (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3), but for the limited purpose of this footnote we assume it to be true that PGA West now owns the property. PGA West presumably intends to sell the property to at least partially satisfy its judgment against Mork, but it argues the result in this case will somehow provide Hulven with a sword it can use to regain ownership of the property in a quiet title action. We fail to follow the logic behind this argument. The running of the statute of repose under section 3439.09(c) merely barred PGA West from setting aside *the deed of trust* as a fraudulent transfer. Although we need not address theoretical steps Hulven might take to recover the property, the UFTA and its statute of repose had no effect whatsoever on PGA West's ability to lawfully foreclose on the property for a reason completely unrelated to the fraudulent deed of trust, and the fact that PGA West may not set aside the deed of trust in no way provides Hulven with a basis for recovering the property in a quiet title action.

Neither party to this appeal has argued the foreclosure sale rendered this appeal moot. To the extent the appeal is moot, we have exercised our discretion to retain jurisdiction to decide the important issues of public interest raised herein. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106.)

44

(2011) 192 Cal.App.4th 742, 752 ["Our review of the legislative history does not indicate our interpretation of the statute would 'defeat legislative intent or produce an absurd result.'"].)

By enacting a statue of repose, which completely extinguishes a right of action to void a fraudulent transfer after seven years; which was intended to provide absolute protection to transferors against claims filed many years later by future creditors; and which is not subject to tolling or to extension for delayed discovery, the Legislature had to have anticipated that at least some unscrupulous debtors would reap the windfall of their fraudulent schemes.[32]  Therefore we must conclude the trial court erred as a matter of law by overruling Hulven's demurrer.  Because PGA West's right of action with respect to the deed of trust was already extinguished, the trial court should have sustained Hulven's demurrer.

Lastly, at oral argument, PGA West argued that, if we reverse the order overruling Hulven's demurrer, it should be given leave to amend its complaint.  PGA West did not request leave to amend in its principal or supplemental briefs.  "'We will not consider an issue not mentioned in the briefs and raised for the first time at oral argument.' [Citation.]" (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1185.)  By waiting until oral argument to address the issue of leave to amend, PGA West forfeited it.

---

[32]  Whether the policy behind section 3439.09(c) "is desirable or wise is not our duty to decide; our role is to construe the statute as enacted by our Legislature." (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 761.)

Moreover, PGA West has not shown "there is a reasonable possibility of an amendment that would cure the complaint's legal defect or defects. [Citation.]" (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) "'The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citations.]'" (*Rossberg v. Bank of America*, *N.A.* (2013) 219 Cal.App.4th 1481, 1491.) PGA West merely asserted it should be granted leave to amend without explaining how it would actually be able to plead viable, timely causes of action against Hulven or Mork. Therefore, we decline to direct the superior court to grant PGA West leave to amend the complaint.

IV.

DISPOSITION

The judgment is reversed. The cause is remanded for the superior court to vacate its order overruling Hulven's demurrer and to enter a new order sustaining the demurrer without leave to amend. The superior court shall then enter a judgment of dismissal. Hulven shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION

<u>McKINSTER</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>CODRINGTON</u>
J.

47